MIDWEST BIBLE AND MISSIONARY INSTITUTE, (Plaintiff) Respondent, v. JOSEPH P. SESTRIC, Assessor of the City of St. Louis, Missouri, ET AL., (Defendants) Appellants, No. 42928—260 S. W. (2d) 25.

Division One, July 13, 1953.

*James E. Crowe,* City Counselor, and *Charles J. Dolan,* Associate City Counselor, for appellants.

*Wilbur B. Jones, Sam Elson* and *Salkey & Jones* for respondent.

CONKLING, J.—In this action plaintiff, Midwest Bible and. Missionary .Institute, here the respondent, sought against the defendants, the St. Louis City Assessor, Comptroller and Collector, here the appellants, a declaratory judgment to the effect that three of plaintiff's properties in St. Louis, described in the petition, are exempt from taxation, and prayed the court also to enjoin the collection of taxes against said properties. The trial court granted all relief as prayed and defendants appealed. Jurisdiction is in this Court because the construction of the Constitution and the revenue laws of the State is involved. Section 3, Article V, and Section 6, of Article X, Constitution of 1945, and Section 137.100(6) RSMo. 1949, V.A.M.S.

The sole issue for our determination is whether the three described properties here in issue owned by plaintiff and used by it as hereinafter stated in connection with its school program are tax exempt. We find no dispute of fact in the record before us. The trial court made findings of fact and conclusions of law. The declaratory judgment entered below declared the three properties in issue here to be tax exempt because of their exclusively school and purely charitable use.

It appears in the evidence and it was found by the trial court that the plaintiff Institute was organized in 1946 and has since continued its existence as a pro forma decree non-profit corporation, engaged *exclusively* in religious, educational and purely charitable work in the operation of a school; that on the date in question here it owned the three described improved parcels of real estate in the City of St. Louis known and designated as 4011, 4044 and 4052 Washington Boulevard, and that defendant assessor had assessed those properties for taxes; that those buildings were formerly homes or apartments;

that the purpose and exclusive activity of plaintiff has been and now is affording "education and training for men and women who desire to study and know the Bible for a life of service as ministers, preachers, missionaries or as other faithful Christian workers who are competent to proclaim and effectually to teach the Gospel of the Lord Jesus Christ; that the plaintiff's appeal is primarily to young men and women who feel the call of God to full-time Gospel service, but that plaintiff Institute and its services and facilities are available to any Christian minister, layman or Sunday School worker who desires a thorough knowledge of the Bible as a primary requisite for effectual Christian service and for the deepening of his spiritual life; that in fulfilling its objectives the plaintiff Institute is actively affiliated with the Independent Fundamental Churches of America and the American Council of Christian Churches and cooperates with various Evangelical Christian groups; that the plaintiff Institute further cooperates with various Gospel Service Agencies in the St. Louis area including Children's Work, Hebrew Missions, Central States Bible Mission, Rescue Mission, and local Chinese Mission, by means of which the students of the plaintiff Institute are given opportunity for practical training in various types of local missionary activity; and that for the purposes of accomplishing its purposes and objectives, plaintiff maintains school and educational facilities, including classrooms, offices, and other facilities and services characteristic of an educational and religious institute in property owned by plaintiff and located at 3964 Washington Boulevard, St. Louis, Missouri, which said property has been recognized and treated by defendant Joseph P. Sestric as assessor of the City of St. Louis, Missouri, as exempt from taxation under the Constitution and Laws of the State of Missouri";

that plaintiff's administrative and formal class instruction programs are carried on in its buildings at 3964 Washington Boulevard in the main building of which is also plaintiff's library, book store and study hall; that in a separate building on the same lot are plaintiff's administrative offices and some additional classrooms; that because of plaintiff's close association with the St. Louis Gospel Center, plaintiff is allowed the use of two buildings owned by Gospel Center one of which is at 4000 Washington Boulevard and has a chapel, dining hall and other facilities used by and needed to carry on plaintiff's educational work;

that at trial time plaintiff had 157 day students and about 75 night students, all from 18 to 27 years of age, and who came from seventeen different states; that in the selection of students for residence in the buildings here in issue preference is sought to be given to deserving out of town students whose financial situation is such that without such help they could not attend and have this type of instruction and environment; that plaintiff offers its students, (a) a four year Bible Seminary course of training to young ministers, (b) a three year

Christian Education course to train young women for Bible and Missionary work and (c) a two year general Bible course; that plaintiff's courses include Christian Education, English, public speaking, Bible synthesis and analysis, homiletics, practical and pastoral theology, Christian psychology and Sunday School administration; that full time students are charged a tuition of $50.00 per year; that students are admitted without regard to religious affiliation or belief but they must be high school graduates and evidence sincere Christianity;

that the three properties in issue in this case are within a half block of plaintiff's main school buildings at 3964 Washington Boulevard and the Gospel Center chapel and dining hall at 4000 Washington Boulevard, which are used by plaintiff's students; that the 4011 Washington Boulevard building (here in issue) has three stories and a basement; that in that basement plaintiff operates the building heating system and the school laundry for both the school and its students; that on the first floor of 4011 Washington is the office of the Superintendent of Women, the superintendent's living quarters and the parlors for that building which latter are used by all of plaintiff's students and wherein also are held student conferences, student meetings and student social events; that the Superintendent of Women looks after the women students, maintains discipline and adherence to study hours and deals with the women students' health problems; that the two upper floors of 4011 Washington house twenty-four women students, who do most of their studying in their rooms;

that the three-story and basement building at 4044 Washington Boulevard (here in issue) is used to house eighteen women students, who live and study there, and also four faculty members and their families, one of the faculty being Dean F. William May, active operating head of the school; that these women students are all subject to the rules and regulations of the Institute and to the supervision also of the Superintendent of Women; that the faculty members resident therein also participate in such supervision and care and there confer with students residing in that and the other buildings upon curricular, religious, moral and other matters within the school's province; that the parlor rooms of the faculty members' quarters are used for students' conferences, committee meetings and faculty meetings;

that the 4052 Washington Boulevard building (here in issue) next door to 4044 Washington, has two stories, basement and attic and houses fourteen men students and the Dean of Men who supervises and looks after their curricular and other interests; that these students study in their rooms and hold meetings and discussion conferences in this building; that a married student who tends the furnace lives with his family in the basement room; that only students or faculty or staff members with family live in any of these three buildings, and no part of any of the three buildings is operated for commercial or business

purposes or profit; that all of plaintiff's resident students eat in the main dining hall of the Gospel Center building at 4000 Washington; that the uniform charge made to all resident students for both room and board is $7.50 per week;

that as to the use made of the faculty living quarters, Dean May testified: "We throw our parlor open for students every week-end, as a place where they can meet together as students. And then, we have various class groups that we invite in to meet and talk over school features. We have school committee meetings where the various groups come in and talk over the purposes and functions of the school. And also students that want to inquire about courses, talk about their courses, not only to me as a teacher, but to all of them together. They frequently want to talk over their courses, and any problems that they have been having with their courses, they come and talk them over, because it is a proper place and the most proper place for them to have that discussion. We consider it most proper for them to come to our home in our premises for that purpose";

that the three properties here in issue were acquired because it is plaintiff's settled school policy to require unmarried students from outside St. Louis to live in the school dormitories under faculty supervision; that the school work cannot be otherwise properly carried on; that in this type of school it is not only helpful that students live together in dormitories and that there be a unified faculty-supervised environment but "we could not conduct a school without that"; that experience compels the conclusion that without the discipline of dormitory life and faculty supervision therein the ends sought would be impossible to attain, and parents would not send their children to the school if they had to live in other environments; that while it would be better if all the school buildings were contiguous, the three here in issue were purchased at different times as funds became available to plaintiff through gifts; that the available funds in each instance were insufficient for full payment and there is a mortgage upon each of the three buildings, upon which payments are currently made;

that none of the faculty pay any rent for living quarters in any of the three buildings; that the Dean of the Faculty receives a salary of only $50.00 per week, half of which is paid by the Gospel Center because he preaches at the Center on Sundays; that other faculty members preach at various churches; that the students have various practical work programs, supply preaching, Sunday School teaching, hospital work and home visitations; that formal school classes of the plaintiff Institute are from 7:25 a. m. to 12:30 p. m., Sundays excepted, and about 85% of the students do some work at other hours to help pay their school expenses; that plaintiff's income from tuition and room and board go into plaintiff's general funds and are used toward paying plaintiff's general overhead, but plaintiff operates the Institute

each year at a loss, and could not operate at all without outside gifts and contributions of the friends of the school;

that to achieve plaintiff's school, religious and charitable objectives it is essential that plaintiff provide at a modest price a place of abode where its non-resident students may live in a clean, decent and wholesome environment in close proximity to its classrooms and under the influence, stimulus and guidance of its faculty; that such objective can be attained only by housing some of its faculty in its student residence halls; that the operation of the instant residence halls are an integral part of the over-all operation of plaintiff's religious and school institution.

The trial court's judgment decreed and declared that the three properties here in issue "* * * were actually and regularly used exclusively for schools and for purposes purely charitable and are exempt from taxation for state, county and local purposes," and cancelled the purported tax bills against said properties and enjoined any attempt to collect the taxes.

Upon the above facts counsel insist upon one side and deny upon the other that the three above mentioned properties in issue here (4011, 4044 and 4052 Washington Boulevard) are exempt from taxation under the following constitutional and statutory provisions:

(1) Section 6 of Article X of the Constitution:

"Sec. 6. Exemptions from Taxation.—All property, real and personal, of the state, counties and other political subdivisions, and non-profit cemeteries, shall be exempt from taxation; and all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, for schools and colleges, for purposes purely charitable, or for agricultural and horticultural societies may be exempted from taxation by general law. All laws exempting from taxation property other than the property enumerated in this article, shall be void."

(2) Section 137.100(6) RSMo. 1949, V. A. M. S.:

"All property, real and personal actually and regularly used exclusively for religious worship, for schools and colleges, or for purposes purely charitable, and not held for private or corporate profit shall be exempted from taxation for state, city, county, school, and local purposes; provided, however, that the exemption herein granted shall not include real property not actually used or occupied for the purpose of the organization but held or used as investment even though the income or rentals received therefrom be used wholly for religious, educational or charitable purposes."

(L. Mo. 1945, p. 1799, §5)

Defendants-appellants cite to us only one case, State ex rel. Spillers v. Johnston, 214 Mo. 656, 113 S. W. 1083, and devote most of their

ten page brief to an argument that the Spillers case does not rule the instant case.

Plaintiff's brief cites us the Spillers case, supra, and the following other Missouri cases, Y.M.C.A. v. Sestric, 362 Mo. 551, 242 S. W. (2) 497, Salvation Army v. Hoehn, 354 Mo. 107, 188 S. W. (2) 826, Missouri Goodwill Industries v. Gruner, 357 Mo. 647, 210 S. W. (2) 38, and Bader Realty & Investment Co. v. St. Louis Housing Authority, 358 Mo. 747, 217 S. W. (2) 489. Plaintiff also cites and relies upon many cases from other jurisdictions.

In Y.M.C.A. v. Sestric, supra, we stated the applicable rule of construction in these words: "We are mindful of the settled rule that exemption statutes are strictly but reasonably (so as not to curtail the intended scope of the exemption) construed. We also have in mind that charitable use exemption depends upon the use made of the property and not solely upon the stated purposes of an organization." See also, Bader Realty & Investment Co. v. St. Louis Housing Authority, supra. And ▮▮▮ it is of course true that each tax exemption case is "peculiarly one which must be decided upon its own facts." Taxation is the rule. Exemption therefrom is the exception. Claims for exemption are not favored in the law.

Defendants' brief mainly argues against a tax exemption for the 4044 Washington Boulevard building alone. It is substantially conceded that the other two buildings are used for school purposes. The brief makes no suggestion or contention that the other two buildings are not exempt. In defendants' brief it is asserted that "* * * the only kind of a building used for a school or a college is a building all of which, or at least a greater portion of which, consists of classrooms and offices." However, defendants' position upon this appeal seems to be based upon the idea that when any of the faculty are housed in the same building with any students that exemption, ipso facto, must be denied. As to the 4044 Washington Boulevard building it is asserted in defendants' brief that that numbered building "is mainly used as an apartment house, housing four families in four commodious apartment units on the first and second floors," and that it is thus used for residential purposes alone. Neither the above quotation from defendants' brief nor defendants' conclusion therefrom is supported by the record evidence. Defendants take no note of or choose to overlook the record evidence that in that building are housed eighteen women students who live and study therein, that the faculty members resident therein participate in the supervision and care of those students and are therein in almost constant conference with the students upon curricular and other matters within the school's province; that in that building are held students' conferences, committee meetings and faculty meetings.

In State ex rel. Spillers v. Johnston, supra, wherein this Court held the Kemper Military Academy building at Boonville to be tax exempt,

it appeared that the building there in issue housed 110 cadet students, 10 faculty officers, 15 servants and defendant and his family, his wife, two sons and two daughters, some of whom were minors. In that case this Court concluded that the fact that Colonel Johnston, the owner and active head of the Kemper Academy, lived within the school building with his family was not decisive against exemption but that it served to achieve the school's objectives. It was held there that the words of the statute ''used exclusively'' or ''exclusively used'' has reference ''to the primary and inherent use as over against a mere secondary and incidental use. If the incidental use (in this instance residing in the building) does not interrupt the exclusive occupation of the building for school purposes, but dovetails into or rounds out those purposes, then there could fairly be said to be left an exclusive use in the school on which the law lays hold.'' In that case this Court also said: ''A family arrangement means, practically, a family association under a common roof, by a common fireside, in a common lodging and at a common table—all mere incidents to such school use. To hold that the proprietor of such school, charged with the primary duty of ideally developing the mind, manners and morals of his pupils, may reside in the school house if he is unmarried and thus have the benefit of the exemption, and may lose it if he is married and reside there, or to hold that if married his wife and children must be banished though his family be in a manner merged in the school family, is to make the law absurd and harsh. Such construction is to be avoided.'' We think the reasoning of the Spillers case is controlling in the instant case.

The chancellor could find from this evidence that the responsibility of the faculty of an institution, such as the plaintiff Institute is here shown to be, is not limited to the classroom alone. It here appears to be imperative that the more learned, mature and experienced faculty members influence and mold the daily thinking and conduct and life of the youthful student. When resident under the same roof those student-faculty contacts are almost constant in dormitory life and clearly are promotive of the ends sought to be achieved by plaintiff's broad school program which it is the expressed constitutional and statutory policy of this State to encourage. It may be neither assumed nor concluded that under the instant facts the educational process of the plaintiff Institute makes no progress in the buildings here in issue. The contrary clearly and affirmatively appears. These students there live and study, prepare assignments, make research, have faculty conferences and meet in discussion groups with faculty guidance. We think the above constitutional provision must be so construed and the above statute so applied under the instant facts as to exempt the properties here in issue as portions of the entire integrated system of the plaintiff Institute, and not merely to exempt the buildings located at

3964 Washington Boulevard where classes are held and lessons are recited. State ex rel. Spillers v. Johnston, supra.

Our above expressed conclusion is in accord with the weight of authority in other jurisdictions. See Note, 15 A.L.R. (2) 1064, and Yale University v. The Town of New Haven, 71 Conn. 316, 42 Atl. 87, Emerson v. Trustees of Milton Academy, 185 Mass. 414, 70 N. E. 442, Ramsey County v. Macalester College, 51 Minn. 437, 53 N. W. 704, Trustees of Phillips Academy v. Inhabitants of Andover, 175 Mass. 118, 55 N. E. 841, State v. Carleton College, 154 Minn. 280, 191 N. W. 400, President and Fellows of Harvard College v. Assessors of Cambridge, 175 Mass. 145, 55 N. E. 844, Elder et al. v. Trustees of Atlanta University, 194 Ga. 716, 22 S. E. (2) 515, Application of Thomas G. Clarkson Memorial College of Technology, 191 Misc. 621, 77 N. Y. Supp. (2) 182, City of Chicago et al. v. University of Chicago, 228 Ill. 605, 81 N. E. 1138, Y.M.C.A. v. Los Angeles Co. et al., 221 Pac. (2) 47, and Appeal of Parmentier et al., 139 Pa. Super. 27, 11 Atl. (2) 690. Authorities could be further multiplied.

We rule that the exemptions declared in the judgment of the court below should be granted. The uses made of the properties here in issue are not only intimately connected with the accomplishment of the plaintiff Institute's exclusive school and purely charitable purposes, but the properties are actually and exclusively used for such school and purely charitable purposes, and such uses do not have for their purposes the making of any profit.

The judgment appealed from is affirmed. It is so ordered. All concur.