**PENTECOSTAL CHURCH OF GOD OF AMERICA, a pro forma corporation, Plaintiff-Respondent,**

v.

**William E. HUGHLETT, Collector of Jasper County, Missouri, Defendant-Appellant.**

**No. 11329.**

Missouri Court of Appeals,
Southern District,
Division One.

June 30, 1980.

Robert P. Warden, Joplin, for plaintiff-respondent.

L. Thomas Elliston, Joplin, for defendant-appellant.

PREWITT, Judge.

Plaintiff is a pro forma corporation which functions as the international headquarters for the Pentecostal Church of God of America. Plaintiff owns land which has situated on it six houses used as residences for executives of plaintiff. The property was assessed real estate taxes, and plaintiff paid the tax under protest and filed an action to recover the amount paid. The trial court granted plaintiff the relief requested and defendant appealed to the Missouri Supreme Court on the basis that the appeal involved "construction of the revenue laws of Missouri". On its own motion the Supreme Court transferred the matter to this court "in which jurisdiction is vested". It appears that our function is to apply the applicable provisions of the state constitution and revenue laws, as construed by the Missouri Supreme Court, to this factual situation.

The land where the houses are now located was donated to plaintiff by the Joplin Chamber of Commerce. Six dwellings were then constructed. They are occupied by plaintiff's general superintendent, general secretary-treasurer, general youth director, director of world missions, executive secretary-treasurer of world missions, and director of North-American Indian missions. No rent is charged for the residences and there is no income from them. They are not held for investment or profit. Executives who live in the residences are elected to their positions by a general convention of plaintiff's members. All are ordained ministers. The houses are used as "dwelling places".

Article X, Section 6, of the Missouri Constitution provides that "all property, real and personal, not held for private or corporate profit and used exclusively for religious worship, . . . [or] for purposes purely charitable, . . . may be exempted from taxation by general law." Section 137.100(5), RSMo 1969, exempts from taxation property "actually and regularly used exclusively for religious worship, . . . or for purposes purely charitable and not held for private or corporate profit". Plaintiff's brief states that "the use of the homes is both for religious and charitable purposes, the persons who occupy the house are in those properties to enable them to perform . . . religious and charitable duties . . .." We start with the general principle that there is a substantial burden on those claiming exemptions under the above referred to constitutional and statutory provisions to establish that their property falls within an exempted class. *Missouri Church of Scientology v. State Tax Commission*, 560 S.W.2d 837, 844 (Mo. banc 1977). Taxation is the rule and exemption therefrom the exception; and exemption claims are not favored in the law. Id. Each tax exemption case must be decided on its own facts. *City of St. Louis v. State Tax Commission*, 524 S.W.2d 839, 843 (Mo. banc 1975).

The record shows that plaintiff was engaged in religious and charitable activities, and also some activities that might be deemed business or commercial. None of the activities took place in these homes. Because our decision is not based on the activities of plaintiff, we do not set out the evidence regarding those activities. The general nature of the owning organization, other than that it is not-for-profit, does not determine whether the use of the particular property is charitable. *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Commission*, 566 S.W.2d 213, 223 (Mo. banc 1978). It is the use of that property which is the determining factor. Id. As a prerequisite for charitable exemption *Franciscan* states, 566 S.W.2d at 224:

"[T]he dominant use of the property must be for the benefit of an indefinite number of people, for the purpose, as expressed in *Salvation Army*, of 'bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.' 188 S.W.2d at 830."

*Franciscan* dealt with "charitable" uses other than "religious" but its emphasis on use should apply to both. At least certain religious purposes would appear to be within charitable use, as charitable use is defined in *Franciscan*. Also see *Salvation Army v. Hoehn*, 354 Mo. 107, 188 S.W.2d 826, 830 (1945), and *Harger v. Barrett*, 319 Mo. 633, 5 S.W.2d 1100, 1102 (1928).

Plaintiff cites *Bishop's Residence Co. of the M.E. Church v. Hudson*, 91 Mo. 671, 4 S.W. 435 (1887). There a house built for bishops of the Methodist Episcopal Church who may reside in St. Louis was held tax exempt. Whether the duties of the bishops or their use of the residence was the same as those who occupy the residences here is not clear to us, but in any event, in light of the "use" test advocated in *Franciscan*, we do not feel that decision is controlling here. We also do not think controlling the decisions where school faculty members occupy the same buildings as students, such as *Midwest Bible & Missionary Institute v. Sestric*, 364 Mo. 167, 260 S.W.2d 25 (1953), and *State ex rel. Spillers v. Johnston*, 214 Mo. 656, 113 S.W. 1083 (1908), as there is no continuing relationship here relating to the organization's purposes as was present there. Nor is there a situation here as in *Jackson County v. State Tax Commission*, 521 S.W.2d 378, 384–385 (Mo. banc 1975), and *Bethesda General Hospital v. State Tax Commission*, 396 S.W.2d 631 (Mo.1965), where the efficient operation of a hospital required that key personnel be located near it.

The statutory phrase "used exclusively" has reference to the primary and inherent use as against a mere secondary and incidental use. *Community Memorial Hospital v. City of Moberly*, 422 S.W.2d 290, 294–295 (Mo.1967); *St. Louis Gospel Center v. Prose*, 280 S.W.2d 827, 831 (Mo.1955); *Salvation Army v. Hoehn*, supra, 188

S.W.2d at 830. The houses here were not used exclusively "for religious worship" or "for purposes purely charitable". Their primary purpose and use were as residences for persons not needy or infirm and whose care would not be a charge on the state, were the houses not provided. We hold that the property is not exempt from taxation.

Exemptions for residences of officials not then functioning as pastors of a specific church have been denied under statutes somewhat similar to ours. See *Harmon v. North Pacific Union Conference Association of Seventh Day Adventists*, 462 P.2d 432 (Alaska 1969); *International Missions, Inc. v. Borough of Lincoln Park*, 87 N.J.Super. 170, 208 A.2d 431 (1965); *Missionaries of Our Lady of La Salette v. Michalski*, 15 Wis.2d 593, 113 N.W.2d 427 (1962) and 15 A.L.R.2d 1064, 1066. See also *Cook County Collector v. National College of Education*, 41 Ill.App.3d 633, 354 N.E.2d 507, 509–510 (1976) and 55 A.L.R.3d 356, 371.

The judgment is reversed.

TITUS, P. J., and FLANIGAN, J., concur.

GREENE, J., dubitante.