**MISSOURI CONFERENCE ASSOCIATION OF SEVENTH DAY ADVENTISTS d/b/a Adventist Book Store, Respondent,**

v.

**STATE TAX COMMISSION of Missouri, Appellant.**

**No. WD 38608.**

Missouri Court of Appeals, Western District.

April 21, 1987.

John B. Williams, Jackson County Counselor, E. David Swartzbaugh, Legal Counsel, Kansas City, for appellant.

Herbert Horowitz and Edward B. Rucker of Horowitz, Shurin & Johl, P.C., Kansas City, for respondent.

Before GAITAN, P.J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

The Missouri State Tax Commission appeals from the decision of the Jackson County Circuit Court which reversed the prior decision and order of the State Tax Commission. The prior decision and order concluded that the property in question, owned by respondent, was not exempt from taxation. The decision and order of the Missouri State Tax Commission is reversed. This cause is remanded to the Missouri State Tax Commission with directions to enter an order declaring the fixtures, furniture, and inventory of respondent, Missouri Conference Association of Seventh Day Adventists, d/b/a Adventist Book Store, exempt from taxation for the year 1983.

Appellant raises a single point and charges that the trial court erred in reversing the decision and order of the State Tax Commission, and in holding that the subject property was exempt from taxation because the court erroneously applied the law.

The facts are undisputed:

Respondent Book Center (hereinafter ABC) is operated by the Missouri Conference Association of Seventh-Day Adventists (hereinafter Conference), a not-for-profit corporation licensed in Missouri. The building housing the ABC was built by a local Kansas City congregation, The Central Seventh-Day Adventists Church (hereinafter Church), which rents the building to ABC for $100.00 per month. The fair market value rental price for the property is $750.00 per month.

The building is located in an industrial/residential area on a street which is not heavily traveled. The location was chosen because the ground was available and located next to the Seventh-Day Adventist School, and is a convenient place for Church members to shop when they pick up and deliver their children. The hours of operation of the ABC were established for the convenience of Church members. The store is open from 1:00 p.m. to 5:00 p.m. on Monday through Thursday, from 8:00 a.m. to 9:00 a.m. on Friday, and from 11:00 a.m. to 3:00 p.m. on the first and third Sunday of the month. (Church members observe Saturday as the Sabbath.)

The ABC was built and established for the purpose of providing Adventists and others in the community with resource materials, consistent with the religious beliefs of Adventists, and with food stuffs, also consistent with the dietary restrictions of the Adventist faith. (Adventists proscribe a vegetarian diet.)

The Conference, which also operates other book centers located in Iowa and Missouri, owns the property in question, which includes shelving, refrigerator and freezer cases, and other store fixtures. The Conference employs Harold Zacharias as the manager of three book centers, including the ABC involved in this action. Zacharias' salary is paid by the Conference.

As mentioned above, the ABC sells food directed toward a vegetarian diet. These items include "health foods" and meat substitutes. Some of these items may be purchased at health food stores or other grocery stores, but the ABC carries a much wider selection and sells the items in quantities unavailable at other stores. As a policy, the ABC does not carry food items that can be purchased elsewhere. For example, the ABC does not carry Bird's Eye frozen vegetables or caffeine-free Coke. (Adventists also abstain from using caffeine.)

The ABC sells books and publications of the Adventist Press. It also sells some publications which are nondenominational as long as they are approved by the reading committee of the national headquarters, located in Washington, D.C., as consistent with the beliefs and teachings of Seventh-Day Adventists. The ABC also

carries Bibles, vegetarian cookbooks published by either the Adventist Press or by members of the denomination, greeting cards, stationery, Christian home calendars, children's Bible games, and a small supply of paints, pencils and crayons which are used by children in Vacation Bible School. The ABC also carries records and cassettes published by the Adventist Press and sometimes key rings, bookmarks, etc., if they contain Bible verses or other religious messages consistent with the Adventist's beliefs. The ABC sells about 57% food items and 42% literary materials.

The prices charged for the literary items are set by the General Conference of Seventh-Day Adventists in Washington, D.C. Pricing for the food is set by Zacharias, to be consistent with other Adventist book centers located throughout the country. The items for sale at the ABC are priced at or below cost. The ABC accepts VISA and MasterCard, and charges customers state and local sales taxes. The ABC also accepts food stamps. The ABC does not advertise to the general public, but advertises by direct mailings to Church members.

The ABC does not give away merchandise to indigent members of the community. However, if an individual desires any merchandise but cannot pay for it, he is referred by the ABC to a pastor of the Church and materials can be purchased for the individual. Many of the literary items are purchased by Church members and are given away to the public as a part of Church members "witnessing" their faith to others.

The operation of the ABC is guided by operational goals published by the Adventist Press. In a portion of that document, it states that the purpose of the Adventist Book Centers is "to enhance the spiritual growth and healthful living of church members and to introduce to the public, through missionary endeavor and attractive displays at Book Centers, to the unique beliefs and life-style of Seventh-Day Adventists." The statement continues and states: "Although the Adventist Book Centers are ser-

vice organizations, they should operate on a sound financial basis without requiring subsidies." (In the past, book centers have been merged for economical and financial reasons.) The document also sets out goals in terms of marketing literature, lists the requirement of operational gains of 5–10% in sales per year, specifies an advertising budget of 2% of sales, and offers guidelines for turns of inventory and acceptable levels of accounts receivable.

Zacharias testified that in 1983 and 1984, the ABC had a total for expenses of 27% and 27.3% of sales respectively, and that, in order to break even, expenses should be 21%. A lower percentage would indicate a profit. Zacharias testified that although the ABC in question showed a loss for 1983 and 1984, the combined statements of the book centers Zacharias manages showed an operational gain. Therefore, the other book centers are subsidizing the Kansas City ABC.

Zacharias testified that when the book centers realize a loss, the Conference absorbs the loss and when there is a profit, that money goes to the Conference to cover the loss.

The parties stipulated that the ABC claims its exemption under Mo. Const. Art. X, § 6 in that the property in question is used exclusively for purposes purely charitable and not held for private or corporate profit.

Appellant's point is taken up and, after full consideration, is found to be without merit and is thus ruled against appellant for the following reasons:

Mo. Const. Art. X, § 6 provides that "all property, real and personal, not held for private or corporate profit and used exclusively for religious worship ... [or] for purposes purely charitable ... may be exempted from taxation by general law." Pursuant to this constitutional authorization, the legislature enacted § 137.100(5), which is the pertinent enabling statute. Respondent does not contend that the ABC is used "for religious worship."

In considering respondent's claim, this court is guided by the following principles: Taxation of property is the rule, and exemption from taxation is the exception. *Missouri Church of Scientology v. State Tax Commission,* 560 S.W.2d 837, 844 (Mo. banc 1977), *appeal dismissed,* 439 U.S. 803, 99 S.Ct. 57, 58 L.Ed.2d 95 (1978); *Midwest Bible & Missionary Institute v. Sestric,* 364 Mo. 167, 174, 260 S.W.2d 25, 30 (1953). Statutes granting exemptions from taxation are to be construed strictly, but reasonably, against the party claiming exemption. *Iron County v. State Tax Commission,* 437 S.W.2d 665, 668 (Mo. banc 1968); *Community Memorial Hospital v. City of Moberly,* 422 S.W.2d 290, 294 (Mo.1967); *Midwest Bible, supra,* 260 S.W.2d at 29. Claims for exemption are not favored in the law, *Community Memorial Hospital, supra,* 422 S.W.2d at 294; and a property owner who claims exemption bears a substantial burden to prove that his property falls within the exempted class. *Missouri Church of Scientology, supra,* 560 S.W.2d at 844; *City of St. Louis v. State Tax Commission,* 524 S.W.2d 839, 844 (Mo. banc 1975).

With the foregoing in mind, this court must determine whether the property in question (i.e., shelving, display stands, coolers and freezer cases, and other store fixtures) was used exclusively for purposes purely charitable. The Missouri Supreme Court, in *Sunday School Board of Southern Baptist Convention v. Mitchell,* 658 S.W.2d 1 (Mo. banc 1983), (hereinafter *Baptist Bookstore* ), reaffirmed the definition of "charity" in the scope of charitable exemptions as set out in *Salvation Army v. Hoehn,* 354 Mo. 107, 188 S.W.2d 826 (banc 1945) as:

[A] gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government ... A charity may restrict its admissions to a class of humanity, and still be public; it may be for the blind, the mute, those suffering under special diseases, for the aged, for infants, for women, for men, for different callings or trades by which humanity earns its bread, and as long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public.

Charity is not limited "solely to the relief of the destitute" but instead includes "all humanitarian activities, though rendered at cost or less, which are intended to improve physical, mental or moral condition of the recipients and make it less likely that they will become burdens on society and make it more likely that they will become useful citizens." *Baptist Bookstore, supra,* 658 S.W.2d at 4–5, citing *Salvation Army, supra* 188 S.W.2d at 830.

The Missouri Supreme Court, in *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Commission,* 566 S.W.2d 213 (Mo. banc 1978), established three criteria which must be considered herein:

(A) The property must be owned and operated on a not-for-profit basis so that there can be no profit, presently or prospectively, to individuals or corporations. The property must not always be operated at a deficit, but any profit must be achieved incidentally to the accomplishment of the dominantly charitable objective and may not be a primary goal of the project.

(B) The property must be dedicated unconditionally to the charitable activity. This criterion stems from the statutory requirement that the property be "used exclusively" for charitable purposes.

(C) The dominant use of the property must be for the benefit of an indefinite number of people, and there must also be direct or indirect benefit to society in addition to and as a result of the benefit conferred on the persons directly served by

the humanitarian activity. The controlling factor is the extent to which such activity is designated to benefit the public and society in general. *Franciscan, supra* at 224.

In its decision, appellant relied on *Baptist Book Store, supra,* to find that the subject property was not exempt from taxation. Appellant held that, like the *Baptist Book Store,* the ABC is not much different from other retail food or bookstores. In support of its decision, appellant reasoned that the ABC is basically a church subsidized business that sells a selective product line at or below cost to a limited clientele; that the ABC's primary existence and marketing effort is directed toward the needs and convenience of Church members; that there was no evidence that the ABC directly serves any substantial number of indigent or disadvantaged people; that the ABC's inventory is not given away to those who are poor or otherwise in need, but is purchased by members of the church or public who can afford to pay; and that because the items might, after purchase, be distributed free through the Adventist ministry does not change the ABC operation which is similar to that of other retail bookstores.

In reversing the decision of the Commission, the circuit court held that the evidence establishes that the subject property was owned and operated on a not-for-profit basis and that any profit achieved would be incidental to accomplishment of the dominantly charitable objective. Profit was not a primary goal of the project. The property was dedicated unconditionally to and used exclusively for the charitable purpose. Equally clear, states the circuit court, is the fact that such property was solely for the benefit of an indefinite number of people and directly or indirectly benefited society as a whole.

■ This court holds that the circuit court correctly applied the test set out in *Franciscan.* The test is not how the property is used by ABC compared to other retail book stores or food stores, and appellant's use of this standard is inappropriate.

■ While it may be useful or add insight to compare the operation in question to other retail stores, a decision as to whether the subject property is exempt does not rest on such comparison. The evidence was substantial and supported the circuit court's finding that the use of the subject property fell within the standard set by *Franciscan.*

The decision and order of the Missouri State Tax Commission is reversed. This cause is remanded to the Missouri State Tax Commission with directions to enter an order declaring the fixtures, furniture, and inventory of respondent, Missouri Conference Association of Seventh Day Adventists d/b/a Adventist Book Store exempt from taxation for the year 1983.

All concur.