## CENTRAL STATES CHRISTIAN ENDEAVORS ASSOCIATION, Respondent,

v.

Patrick NELSON, Nodaway County Assessor, and Mary Noel, Ex–Officio Collector for Nodaway County, Appellants.

No. 77637.

Supreme Court of Missouri, En Banc.

May 30, 1995.

David A. Baird, Pros. Atty., Nodaway County, Maryville, for appellants.

James W. Whan, Maryville, for respondent.

HOLSTEIN, Judge.

Nodaway County tax assessing authorities appeal an adverse judgment by the circuit court holding that Central States Christian Endeavors Association (CSCEA) is entitled to a religious exemption from property taxes on a house it owns in Maryville, Missouri. Following opinion by the Missouri Court of Appeals, Western District, this Court granted transfer. *Rule 83.03.* Affirmed.

After the Nodaway County Board of Equalization authorized assessment of taxes on its real estate, CSCEA sought review in the circuit court, where a "trial de novo" was held pursuant to § 138.430.3, RSMo 1994. The sole issue before the circuit court and on appeal is whether the facts in this case sufficiently establish that CSCEA's use of its real property is qualified as exclusively religious when rooms are rented to student leaders of CSCEA.

In the trial court, the taxpayer has the burden of establishing that its property falls within the exempted class. *Missouri Church of Scientology v. State Tax Commission,* 560 S.W.2d 837, 844 (Mo. banc 1977). The standard of appellate review of evidentiary issues in a nonjury case is that the judgment will be sustained unless there is no substantial evidence to support it or unless it is against the weight of the evidence. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Due regard is given to the opportunity of the trial court to have judged the credibility of witnesses. *Rule 73.01(c)(2).*

CSCEA is a Missouri not-for-profit corporation. It has owned and maintained a Christian campus house across the street from Northwest Missouri State University (NWMSU) since July 1990. From that facility it seeks to carry out its corporate purposes, which are to promote Christianity among NWMSU students and staff by providing Bible studies, fellowship and a full-time minister as counselor for students.

The building on the premises is a converted two-story residence. It has a large lounge, meeting room, kitchen, computer

room, minister's office, bathroom and three bedrooms. During the school year, an average of forty-five people attend a Tuesday night Bible study each week and ten to twenty international students attend a Friday night Bible study in the facility. Five or six women normally attend a prayer group each Tuesday at noon year around. The building is used for other events related to CSCEA's ministry, including fellowships and the promotion and administration of Christian campus activities. The full-time minister spends an average of thirty hours per week in his office, studying and counseling with students, as well as attending to other administrative duties.

CSCEA rents the three bedrooms in the facility to as many as four NWMSU students who are professed Christians. These four students are selected from a pool of names generated by a survey of the CSCEA student members. In the survey, the members are asked to identify those among them who are "spiritual leaders." CSCEA officials interview those students identified, explain to them the obligations of living in the facility, and offer accommodations to up to four students. Those who agree to CSCEA's terms and conditions live in the facility the following school year. The rental paid by each is approximately $130 a month, which is below the rent charged for dormitories and cheaper than most similar housing in the community. The student tenants are required to be active in CSCEA's campus ministry. They must attend one of the Bible study groups and attend a Christ-based church. In addition to keeping his or her room and the general areas clean, each student is required to serve as a "student leader" in the ministry. This means that each leads or helps lead a family group, which is a small group that keeps contact with students that come to the Bible studies. Certain individual tasks related to the ministry are assigned to each of the students. One has the task of planning the worship time on Tuesday evenings, another planning fellowship activities, another handling the money used for student Christian mission trips, and another preparing and distributing a newsletter and setting up prayer groups. If one of the residents fails to comply with his or her obligations, the student is asked to find housing elsewhere. Two students have been dismissed for failure to perform their responsibilities. While the tenant students have free use of the main floor of the house, so do other students to whom CSCEA provides its ministry.

Article X, § 6 of the Missouri Constitution provides in part: "[A]ll property, real and personal, not held for private or corporate profit and used exclusively for religious worship ... may be exempted from taxation by general law." Section 137.100(5) exempts from taxation "all property, real and personal, actually and regularly used exclusively for religious worship ... and not held for private or corporate profit...."

■ It is conceded that the Bible study and prayer meetings qualify as religious worship. The issue here is whether the property is "used exclusively" for that purpose. In Missouri law, "used exclusively" has reference "to the primary and inherent use as over against a mere secondary and incidental use." *Midwest Bible and Missionary Inst. v. Sestric*, 364 Mo. 167, 260 S.W.2d 25, 30 (1953); *Barnes Hosp. v. Leggett*, 646 S.W.2d 889, 892 (Mo.App.1983); *Pentecostal Church of God of America v. Hughlett*, 601 S.W.2d 666, 668 (Mo.App.1980); *see also, Community Memorial Hosp. v. City of Moberly*, 422 S.W.2d 290, 294–95 (Mo.1967). If the incidental use, in this case renting rooms to students, does not interrupt the exclusive occupation of the building for religious worship, but dovetails into or rounds out that purpose, then it can be said that the property has an exclusive use which authorizes the exemption. *Midwest Bible, supra.*

■ The assessing authorities argue that a maximum of five hours per week during the school year is devoted to Bible studies and prayer services that would qualify within the definition of "religious worship." They further argue that the full-time minister's presence in his office for thirty hours a week cannot be counted because there is no showing that he devotes his time to "religious worship" during that period. This Court has not taken, nor should it take, such a rigorous view of what constitutes being "used exclusively for religious worship." Merely because more hours of the week are devoted to eating, resting, studying, fellowship, adminis-

tration and counseling services than to purely religious worship does not disqualify a property from being exclusively used for religious worship. If the test were merely one of counting hours of use, many religious organizations holding only one or two worship services per week but having a full-time staff for administration or counseling and the holding of regular fellowships or meals would be disqualified from the religious exemption for their facilities. The earlier holdings that incidental uses serving to promote the primary purpose of religious worship do not disqualify the property from being entitled to exemption are reaffirmed.

Here there is substantial evidence from which the trial court could conclude that CSCEA's purposes in renting the rooms to students were incidental to religious worship. By renting its rooms to a few students, CSCEA is able to provide a clean and accessible facility available to all those to whom it ministers. The full-time presence of student leaders at the facility is closely related to CSCEA's religious purpose. The students are readily available and required to plan, promote and execute the religious worship activities. This is not a case where the rental is unrelated to the tenants' religious activities and where the rent paid is equivalent to that in the general community. *Compare, Sunday School Board of the Southern Baptist Convention v. Mitchell*, 658 S.W.2d 1 (Mo. banc 1983), holding that real estate used solely as a denominational bookstore was not "exclusively used" for charitable purposes where denominational and nondenominational literature were sold at competitive prices to the general public without providing any merchandise at or below cost to any person. Providing low cost housing to persons required to actively participate in advancing a religious worship purpose in a facility is incidental to religious worship, even though the hours spent socializing, eating, studying or resting may exceed the hours spent in purely religious devotions.

The judgment of the trial court is affirmed.

All concur.