(No. 43209.—

ILLINOIS INSTITUTE OF TECHNOLOGY, Appellee, *vs.* CAL SKINNER, JR., County Treasurer, *et al.*, Appellants.

*Opinion filed May 21, 1971.—Rehearing denied October 4, 1971.*

WILLIAM J. COWLIN, State's Attorney, of Woodstock, (THOMAS A. HENLEY, JR., Assistant State's Attorney, of counsel,) for appellants.

JOSLYN & GREEN, of Woodstock, (JAMES R. GREEN and MICHAEL J. SULLIVAN, of counsel,) for appellee.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This action was instituted by plaintiff, the Illinois Institute of Technology (I.I.T.), to enjoin defendants from collecting taxes on a 107-acre tract, including six major buildings, located in McHenry County. Plaintiff contended that the property was being used exclusively for school purposes, and was therefore exempt from taxation. (Ill. Rev. Stat. 1967, ch. 120, par. 500.1; Ill. Const., art IX, sec. 3.) Both parties appeal from the judgment of the McHenry County circuit court which found 67 acres, including the buildings, exempt from taxes for the second half of 1967 and subsequent years, and denied the exemption as to the other 40 acres. The revenue being involved, this court has jurisdiction of the direct appeal. 43 Ill. 2d R. 302(a).

The property at issue here was donated to I.I.T. by Union Oil Company of California on June 30, 1967, pursuant to an agreement that it would be used as a "scientific research center and as an educational center for scientific and technological subjects." Plaintiff maintains that it intends to develop a major auxillary campus on the property, and that the full program is in the "discussion stage." One

building consisting of approximately 12,000 square feet houses the power plant which serves the remaining five buildings, totaling approximately 92,000 square feet. The oil company had used the premises for laboratory research, and many rooms contained permanently installed fixtures. Plaintiff claims to have created 6 or 7 classrooms in 1967, and taught 6 courses with a total of 50 students. The parties stipulated that 3% of the property "was used for actual classroom and related uses" in 1967; it was admitted that no classes utilized the outside area in that year. The Mc-Henry County Junior College utilized 1,500 square feet of office space during the year, under a lease from I.I.T., and 40 acres of land was leased to a farmer for crop purposes at a normal rate for the area. In the first semester of 1968, plaintiff held nine courses, with 60 students; 15 courses were taught in the second semester, involving approximately the same number of students. Plaintiff also used one room as an office, conducted a research project involving an outdoor antenna, and used one half of one floor for storage. Under a new lease in 1968, the junior college paid $63,750 for the use of 51,000 square feet. Dr. Forest D. Etheredge, president of the college, explained that there was a flexible agreement whereby the college actually used up to 60,000 square feet. Various areas of the grounds were also used for archery and golf classes. The enrollment of the college totaled 1600 in 1968, of which 325 were full-time students. The parties stipulated that an average of 25% of the property "was used for actual classroom and related uses" in 1968; as to both 1967 and 1968, the parties further stipulated that no other use was made of the property except for the crop lease. It was also agreed that the stipulation would prevail in the event that it conflicted with the testimony as to those years.

On August 18, 1967, plaintiff filed an application with the board of review of McHenry County, seeking exemption of the entire property for the second half of 1967.

The exemption was denied *in toto* on February 19, 1968, and plaintiff sought no further administrative relief before bringing the present action to enjoin taxation from June 30, 1967, onward. Defendants contend that as to 1968 and 1969, plaintiff has failed to exhaust its administrative remedy of application to the board of review (Ill. Rev. Stat. 1967, ch. 120, par. 589(6),) and should therefore be denied judicial relief. However, as plaintiff points out, the statutory remedy is not exclusive. Two early decisions by this court clarify that equity may act to enjoin the taxation of exempt property, and that the statutory remedy is merely cumulative. In the initial case of *Preston* v. *Johnson*, 104 Ill. 625, the county board of review denied plaintiff's application for exemption, whereupon plaintiff brought a bill in chancery to enjoin collection of taxes on the exempt property. Noting that the legal remedy of appeal from the board's decision was available and adequate, the court held that the plaintiff having failed to appeal could not then seek relief by a bill in equity. The court affirmed the dismissal of the bill, stating in conclusion that, "The remedy through the county board of review and by appeal we regard as adequate and exclusive." (*Preston* v. *Johnson*, 104 Ill. 625, 630; but see *Searing* v. *Heavysides*, 106 Ill. 85.) Shortly thereafter, this court was constrained to clarify the above statement. The Illinois Central Railroad had brought a bill in equity to enjoin the collection of a tax assessed against certain of its property, which was exempt from taxation by reason of the railroad's charter. (*Illinois Central R.R. Co.* v. *Hodges*, 113 Ill. 323.) The trial court dismissed the bill upon the ground that the remedy at law was exclusive, under the authority of *Preston* v. *Johnson*.

This court reversed, explaining that a court of equity will enjoin collection of a tax upon exempt property, notwithstanding the availability of an adequate remedy at law by way of application to the board of review. The court further explained that where an application for relief is

made before the board of review, in pursuance of the statutory remedy, then that remedy becomes exclusive when the board denies the application. The party "can not then, after an adverse decision, go into chancery for relief, —and that was the case in *Preston et al.* v. *Johnson, supra.* Having selected his forum,—one which affords a completely adequate remedy,—he must adhere to it. * * * If the party elect the remedy provided by this section, he will not be allowed to abandon it and then go into equity, but be may go into equity in the first instance, and have relief. * * * The [statutory] remedy is adequate, and when that forum is selected and its decision invoked, it becomes exclusive. In cases like the present, before a tribunal has been selected, it must be regarded as only affording a cumulative remedy." (*Illinois Central R.R. Co.* v. *Hodges*, 113 Ill. 323, 326.) This proposition has been reiterated in subsequent decisions of this court, including *Owens-Illinois Glass Co.* v. *McKibbin*, 385 Ill. 245, 256, cited by plaintiff, where it was stated, "It is established that where a tax is unauthorized by law, or where it is levied upon property exempt from taxation, equity will take jurisdiction and enjoin the collection of the tax. * * * It is also the rule in such cases that where remedies are provided by statute they are cumulative, and are exclusive only where they have been first invoked by the taxpayer." (See also, *Sanitary District of Chicago* v. *Young*, 285 Ill. 351, 370, and cases cited therein.) We accordingly find no bar to the exercise of equity jurisdiction upon the exemption claim for 1968 and subsequent years. However, the plaintiff did choose to pursue the statutory remedy before the board of review as to the 1967 exemption claim. In our opinion, that claim was therefore not a proper subject for equity jurisdiction, and the judgment must be reversed insofar as it enjoins collection of the tax for 1967.

We now consider the merits of the exemption claimed for 1968 and thereafter. Plaintiff maintains that the entire

107-acre tract is entitled to exemption under sections 19 and 19.1 of the Revenue Act, which exempt, *inter alia,* all property "used for public school, college, theological seminary, university, or other educational purposes." (Ill. Rev. Stat. 1967, ch. 120, par. 500.1.) This provision implements section 3 of article IX of the Illinois constitution, which permits exemption by general law of property "used exclusively" for school purposes. In arguing that the entire tract should be exempt, plaintiff proposes that its intention to develop in the future a complete satellite campus, fully utilizing the entire 107 acres, should qualify the property for exemption. However, the constitution and statute permit exemption only on the basis of a qualifying use. We have often held that property must be in actual use for the exempting purpose, to qualify for exemption. "[E]vidence that land was acquired for an exempt purpose does not eliminate the need for proof of actual use for that purpose. Intention to use is not the equivalent of use." *Skil Corp.* v. *Korzen,* 32 Ill. 2d 249, 252; *Glen Oak Cemetry Co.* v. *Board of Appeals,* 358 Ill. 48; *People ex rel. Pearsall* v. *Catholic Bishop of Chicago,* 311 Ill. 11; *Knox College* v. *Board of Review,* 308 Ill. 160; *In re Allerton,* 296 Ill. 340; *Presbyterian Theological Seminary of the Northwest* v. *People ex rel. Johnson,* 101 Ill. 578; *People ex rel. Huck* v. *Graceland Cemetery Co.,* 86 Ill. 336.

Plaintiff next maintains that the tract and buildings are one unit, and that there is no basis for granting only partial exemption. Abundant authority refutes this contention as well. "Where a tract is used for two purposes, there is nothing novel in exempting the part used for an exempt purpose and subjecting the remainder to taxation. *City of Lawrenceville* v. *Maxwell,* 6 Ill. 2d 42; *City of Mattoon* v. *Graham,* 386 Ill. 180, *Glen Oak Cemetery Co.* v. *Board of Appeals,* 358 Ill. 48; *People ex rel. Pearsall* v. *Catholic Bishop of Chicago,* 311 Ill. 11." (*People ex rel. Kelly* v. *Avery Coonley School,* 12 Ill. 2d 113, 117.) These prin-

ciples are well reflected in *Pearsall,* which involved an exemption claim for a 465-acre tract of seminary property, some of which was not yet completely developed. The 65-acre campus and main buildings were conceded to be exempt. The remaining acreage included the gardener's house, the nursery, dormitory, refectory, summer school, baseball diamond, tennis courts, and lake, all of which were held exempt. Of the remaining acres, much appeared to be in the actual process of development and adaptation and exemption was allowed. However, a tract of 80 acres of unused land, slated for eventual development as a golf course, was held taxable. "That it was intended to use it for such purpose in connection with the school was not sufficient, even if it would have been exempt had it been devoted to the use intended * * *." (*People ex rel. Pearsall v. Catholic Bishop of Chicago,* 311 Ill. 11, 17.) The 40-acre area held taxable by the trial court here is analogous to the 80-acre 'golf course' parcel in the *Pearsall* case. There has been no showing of actual use for an exempting purpose, nor of actual physical development or adaptation for such use. Neither the school's professed plan for utilization of the property some 5 to 15 years hence, nor the fact that the land is contiguous to 67 acres presently held exempt, can overcome the statutory and constitutional requirement of actual use. The judgment of the trial court is therefore affirmed as to the 40 acres ruled nonexempt.

Defendants similarly contend that the remaining 67 acres and buildings thereon are exempt only to the extent of actual use for school purposes and rely on the stipulation that during 1968, "an average of 25% thereof was used for actual classroom and related uses" and no other use was made of the property. While it is conceded that the stipulation controls in the event of conflict in the testimony, it does not, in our judgment, adequately address the issues involved nor can it control the application of legal principles.

We must recognize that it is the primary use of prop-

erty, rather than its incidental uses, which determines tax exemption status. In the application of this principle, we may encounter two distinct situations. First is the case where the property as a whole, or in unidentifiable portions, is used both for an exempting purpose and a nonexempting purpose. The property will be wholly exempt only if the former use is primary and the latter is merely incidental. (*MacMurray College v. Wright*, 38 Ill. 2d 272, 278; *People ex rel. Goodman v. University of Illinois Foundation*, 388 Ill. 363, 370-71.) In the second situation, an identifiable portion of the property may be exempt, while the remainder is taxable if it is a substantial rather than incidental portion of the property and is used for a non-exempting purpose or not used at all. Thus, "there may be separate assessments by separating uses, as in the case of *First M. E. Church* v. *City of Chicago*, 26 Ill. 482, where the court held that the first story of the church building, occupied for stores, banking business and the like, and the second story, used for lawyers' and doctors' offices and other business purposes, were not exempt from taxation, but the main body of the third and fourth stories, used for religious purposes, was exempt." *People ex rel. Carr.* v. *Sanitary District of Chicago*, 307 Ill. 24, 27-28; see also *City of Lawrenceville* v. *Maxwell*, 6 Ill. 2d 42; *City of Mattoon* v. *Graham*, 386 Ill. 180, 186-87; *People ex rel. Baldwin v. Withers Home*, 312 Ill. 136, 140-41.

Application of these rules to the facts before us leads to the conclusion that the trial court was correct in holding the 67-acre tract and buildings thereon exempt from taxation in 1968 and thereafter. It seems clear that the "average of 25%" in the stipulation refers to the percentage of total facilities on the 67 acres in actual use at any given time during the year, but that different portions of the property were used at different times. It would, in our judgment, be unreasonable to require that space must actually be physically occupied at all times to be in "use" within

the meaning of the constitutional and statutory provisions relating to exemption, or that those provisions require continuous use at all times during the year. As mentioned earlier, the evidence before the trial court included testimony that as much as 60,000 of the 92,000 square feet of the available area, presumably excluding the 12,000 square feet employed by the power plant, was used by the junior college during the year. In addition, the outside area was used for parking and physical education classes. It was also evident that the use was expanding, and that substantial renovation of the facilities was underway. On the basis of the evidence presented, we think it is a fair conclusion that the proportion of the property which was not in use for an exempt purpose was merely incidental, and hence not subject to separation from the whole and to taxation as non-exempt property. Inasmuch as the evidence for 1969 was of even more extensive use, we reach the same conclusion as to that year. The judgment exempting the 67 acres and the buildings thereon for 1968 and thereafter is accordingly affirmed.

*Affirmed in part*
*and reversed in part.*