**ST. JOHN'S MERCY HOSPITAL, a corporation, Plaintiff-Respondent,**

**v.**

**George C. LEACHMAN, Collector of Revenue, and St. Louis County, Missouri, Defendants-Appellants.**

**No. 59564.**

Supreme Court of Missouri, En Banc.

July 11, 1977.

**724**

Thomas W. Wehrle, St. Louis County Counselor, Clayton, for defendants-appellants.

Robert C. Jones, Clayton, for plaintiff-respondent.

RENDLEN, Judge.

This direct appeal, involving construction of the revenue laws, comes to us under Mo.Const. Art. V, § 3, presenting two issues: (1) The property tax exemption *vel non* of respondent's "Doctors' Building", and (2) Whether respondent failed procedurally attempting to appeal a ruling of the St. Louis County Council denying the exemption, and is bound by that "decision".

Respondent, St. John's Mercy Hospital, a pro forma decree corporation, was notified in 1973 that a portion of the land at its St. Louis County Medical Center and the building situated thereon known as the St. John's Mercy Doctors' Building would be assessed that year for *ad valorem* tax purposes. During 1973, respondent completed converting the building from a hospital school-of-nursing to a doctors' office building and the remodeled structure provided ground floor space for a laboratory, surgical research facilities and a pharmacy leased to a separate commercial enterprise, the Kirkwood Drug Company with which respondent had no connection except as lessor. In the radiology extension department 4% to 5% of services rendered were "billed" by doctors on a private patient basis. The next·level, described as the "first floor", housed classrooms, a library, a personnel office, the department of social services and

a speech and hearing testing area, supervised by a physician, in attendance part-time, not officed on the premises. The remaining five floors, were then leased or in preparation as offices for private physicians at rentals comparable to commercially owned buildings in the area and the approximately sixty physicians, officed and engaged in private practice there, were required under terms of their leases to participate in the hospital's teaching programs.

Respondent presented abundant opinion evidence that the building's proximity to the hospital facilitated participation in the teaching program, attracted a valuable mix of medical specialists and upgraded the quality of medical care in the hospital. Further, that development of the building for physicians' offices increased the physicians' identity with the institution, from which it may be said that officing the physicians, in close proximity with the hospital encouraged increased use of its facilities for patient care but this is hardly a critical factor demonstrating charitable use of those offices. The building also afforded rent-free office space for the full-time salaried hospital staff physicians, who were permitted to pursue separate part-time private practices there.

On receipt of the assessment notice, respondent, petitioned the Board of Equalization requesting an exemption for the Doctors' Building and following the Board's denial of that petition, pursued three separate courses of appeal.

On January 15, 1974, respondent petitioned the Missouri State Tax Commission for review of the Board's decision under § 138.110 [1] but was informed by the Commission the action was out of time, not having been filed by August 15, 1973, as required by the statute. Also on January 15, 1974, respondent filed a written request for the St. Louis County Council to consider its "petition for correction of erroneous assessment" pursuant to § 503.090, St. Louis County Revised Ordinances,[2] which was de-

1. All statutory references are to RSMo 1969, unless otherwise indicated.

2. S.L.C.R.O. § 503.090—"Correction of Erroneous Assessment, Hearing. In the event a peti-

nied by the Council in July. On January 21, 1974, respondent under protest paid the tax assessed and filed suit in the circuit court of St. Louis County under § 139.031, RSMo Supp.1971, seeking a declaration of exemption and refund of the tax. The trial court declared the questioned building exempt, ordered refund of the tax paid and Count II, by which respondent sought review of the order of the County Council's denial of its "petition for correction of erroneous assessment", was dismissed.[3] From that judgment this appeal is taken.

For their first point, appellants contend the trial court erred adjudging the Doctors' Building exempt from real property taxes under § 137.100 because that building, though a part of respondent's medical center, was not *used exclusively for purposes purely charitable.*

■ While there is no contention that respondent corporation and its hospital, are other than charitable institutions, the claimed exemption depends upon the *use* of the building here involved, not merely the charitable character of the owner. *Evangelical Lutheran Synod of Missouri, Ohio And Other States v. Hoehn,* 355 Mo. 257, 196 S.W.2d 134, 143 (1946). Mo.Const. Art. X, § 6 (as amended in 1972) prescribing the criteria for legislative establishment of certain real estate taxation exemption, provides in pertinent part:

"... all property real and personal, not held for private or corporate profit and *used exclusively ... for purposes purely charitable ...* may be exempted from taxation by general law." (Emphasis ours.)

Pursuant to that authority the legislature by § 137.100, provided:

"The following subjects shall be exempt from taxation for state, county or local purposes: ... (5) All property, real and personal, *actually and regularly used exclusively ... for purposes purely charitable* and not held for private or corporate profit, except that the exemption herein granted does not include real property not actually used or occupied for the purpose of the organization but held or used as an investment even though the income or rentals received therefrom is used wholly for ... charitable purposes." (Emphasis ours.)

■ It is well settled that tax exemption statutes are strictly but reasonably (so as not to curtail the intended scope of the exemption) construed; *Community Memorial Hospital v. City of Moberly,* 422 S.W.2d 290, 294 [1] (Mo.1967). Further, claims for exemption are not favored in the law, and the burden is on the owner to establish the status. *City of St. Louis v. State Tax Commission,* 524 S.W.2d 839, 844 (Mo.banc 1976). It is also recognized that each tax exemption case is peculiarly one which must be decided upon its own facts, turning upon the particular record presented. *Jackson County v. State Tax Commission,* 521 S.W.2d 378, 381 (Mo.banc 1975); *Bethesda General Hospital v. State Tax Commission,* 396 S.W.2d 631, 633 (Mo.1965). The statutory phrase "used exclusively" has reference to the primary and inherent use as over against a mere secondary and incidental use. If the incidental use does not interrupt the exclusive occupation of the building for charitable purposes, but dovetails into or rounds out those purposes, then there could fairly be said to be left an exclusive use in the charity on which the

---

tion for correction of an erroneous assessment is denied by the Board of Equalization, the taxpayer, . . . may within fifteen days thereafter file with the County Clerk a written request for the County Council to consider the petition and the Clerk shall promptly set the matter for hearing, and the County Council shall grant or deny the petition according to the facts and make all necessary orders for the correction of any errors found to exist and the assessment shall be corrected accordingly."

3. Following the County Council's denial of the petition in July, 1974, in the "second" proceeding described above, respondent, who had not otherwise sought review of that action, amended its petition then pending in the § 139.031 proceeding by adding a second count alleging "Plaintiff has exhausted all administrative remedies and is aggrieved by the final decision of the defendant St. Louis County, Missouri, acting by and *though* [sic] its County Council, in denying its petition."

law lays hold. *Midwest Bible & Missionary Institute v. Sestric*, 364 Mo. 167, 260 S.W.2d 25, 30 [7] (1953), citing *State ex rel. Spillers v. Johnston*, 214 Mo. 656, 113 S.W. 1083, 1085 (1908). " 'Dominant use' or 'principal use' cannot be substituted for the words 'used exclusively'." *Community Memorial Hospital, supra* at 295.

■ Examining the record against this legal backdrop leads to the conclusion that the office space leased by physicians in pursuit of their private practice, when coupled with the fact that a portion of the Doctors' Building was leased to a commercial pharmacy, constitute uses not exclusively for purposes purely charitable. These activities occupy a substantial portion of the building in question. Respondent's exhibit # 3 identifies the building's 75,039 sq. ft. of usable space as follows: 36,492 sq. ft. (or 48.6%) is for offices rented by doctors, 29,-093 sq. ft. (or 38.8%) is "space utilized by the hospital" and 9,454 sq. ft. (or 12.6%) for common halls. Prorating the 9,454 feet of common halls to the doctors' use vis-à-vis the hospital use on a space occupancy basis, 56% or 5,294 sq. ft. would be allocable to the former and 44% or 4,160 sq. ft. to the latter. Thus 56% of the building's usable space is devoted on a substantially full-time basis to the private practice of the tenant-doctors and the remaining 44% to hospital purposes, though at times the space of each is used for purposes of the other.

Respondent vigorously contends that because each physician-tenant is required by his lease; (1) to participate in the teaching program of the medical staff, (2) to contribute a reasonable portion of his time participating actively in the development of the medical education at the Center, (3) to afford interns and residents an opportunity "to see interesting private teaching cases in the Lessee's office subject to patients' approval", and (4) to see certain clinic patients in his office from time to time, the building's commercial time use is diluted, or di-minished, but the record provides scant information as to area or time for assessing the extent of this dilution. We cannot determine with any certainty how much time the physicians devoted to teaching, clinic service or administering related hospital programs but each private physician is permitted an unlimited private practice, and in that role bills and deals directly with his patients.[4] The argument that the "on site" doctors' offices permit prompt, convenient and more efficient performance of their public service for hospital purposes is equally applicable to each doctor's private practice.

The fact that portions of the building are used for the hospital's radiology department extension, laboratory, classrooms, research programs and similar hospital functions previously detailed herein, does not without more, redeem the exempt status of the building since "Missouri does not follow the partial exemption theory and if any part of the property is used for a non-charitable purpose the whole is taxable." *City of St. Louis, supra* at 843.

The record does not reveal the commercial pharmacy's size, though we may conclude the area so occupied was in addition to the 56% physician space use. While the estimates we have made of space use are subject to some variation, they are based upon respondent's evidence and it is respondent's burden to establish the exempt status.

Respondent cites, among others, *Bethesda General Hospital v. State Tax Commission, supra*, as authority for a declaration of an exemption here. However, the facts clearly distinguish *Bethesda* from this case. There the hospital's seven residential properties were occupied rent-free by salaried hospital employees and such occupancy was partial consideration for performance of their hospital duties. It was undisputed that the doctors, the nurse, and the maintenance personnel who occupied the seven resi-

4. Twelve full-time salaried staff physicians, who directed the various hospital departments and the teaching program, maintained rent-free offices in the Doctors' Building and were per-mitted some private patients whom they billed directly. One staff physician derived about 10% of his income from private practice.

dences were full-time key personnel, necessary to the operation of the hospital and on call 24 hours a day. The court stated, l. c. 635, "We rule that the *use by these employees* of the properties as residences provided them by respondent is not the dominant purpose, but is merely incidental to respondent's said main charitable purpose." (Emphasis supplied.) It was not decided in *Bethesda*, if the residents had been other than full-time hospital employees and had used a substantial area of their residences or a substantial portion of their time in a private-for-profit medical practice or other commercial business, whether the exempt status would obtain.

In *Jackson County v. State Tax Commission, supra,* one intervenor, Research Hospital of Kansas City, used a portion of the hospital's complex "as residence quarters for hospital employees, nursing students, para-medical students and their families." The court considered such use closely analogous to that of the residence quarters in *Bethesda*, and while we reaffirm the results in both cases, they are not dispositive of the issues before us now.

■ Other authorities cited by respondent include *Community Memorial Hospital v. City of Moberly, supra,* wherein it was held a charitably exempt hospital would not lose that status, though it accepted and charged full paying patients, unless its accommodations were devoted to such patients only and the hospital failed to receive or extend its services to the usual and ordinary number of indigents applying for admission. While the legal principle stated there is correct, the issues here were not involved.

More nearly related factually is *St. Louis Gospel Center v. Prose,* 280 S.W.2d 827 (Mo. 1955), in which a three story fifteen room brick residence was purchased by a religious corporation and the questioned building was an "annex for the church operation." Though the annex was largely used in connection with church work, various persons lived in the building "without rent" including students "who desire to study and know the Bible". "[O]ther Christian workers who are interested in the Lord's work" were permitted to reside there at modest rentals and all of the rentals were utilized by the Gospel Center for its religious educational and charitable work. While a large part of the "annex" was used for assembly rooms, group meetings, church office, religious services, Bible classes and directors' meetings, at least two rooms were rented to a tenant who was not a worker or a family of a worker at the church or the Bible Institute. Against allegations that the deviation was "insubstantial, transitory and *de minimis*" and although the rent paid by the tenant was used in furthering the church's religious purposes, such use of the premise by the tenant was sufficient to destroy "the 'exclusive' use of the property for such purposes within the meaning of the tax exempting provisions" of § 137.100. Similarly, in *Fitterer v. Crawford,* 157 Mo. 51, 57 S.W. 532 (1900), the Trenton Lodge No. 111, A.F. and A.M., which operated for fraternal, benevolent and charitable purposes, owned a three story brick building. The first story was rented as a storeroom, the second story also rented. The third was occupied by the members for charitable purposes as the lodge room. Notwithstanding the lodge's purely charitable character or the fact that rentals from the first two stories were used for charitable purposes, the commercial tenants use of approximately two-thirds of the building removed the exempt status for the entire property.

It may be argued that the special status of the physician-tenants in the Doctors' Building at bar is more related to the owner's charitable purposes than the tenants in *Gospel Center* or *Fitterer* because the physician-tenants must devote a part of their time and leased space to the hospital purposes. However, there is no adequate showing that the mandatory charitable service required of the physicians or the derivative charitable benefit from their presence is sufficient to overcome the fact that a substantial portion of the space was used for private practice of medicine and a portion of the premises was leased to the commercial pharmacy. It should be noted that

the pharmacy was apparently in competition with respondent's pharmacy located in the hospital building. Its presence has the same legal effect on the claimed exemption as the first floor storeroom tenant in *Fitterer* and the non-member resident tenant in *St. Louis Gospel Center.*

For these reasons, the judgment of the trial court must be reversed with respondent's questioned property restored to the tax rolls of St. Louis County and the county collector authorized to release and disburse the impounded taxes.

Turning now to appellants' point two, they urge that we declare respondent bound by the adverse decision of the St. Louis County Council which denied respondent's exempt status claim. Having found that no right of exemption adheres, it is unnecessary to reach the point.

The judgment as to Count I is reversed and the cause remanded so that judgment may be entered in accordance with this opinion. The propriety of the judgment of dismissal of Count II is moot.

MORGAN, C. J., and HENLEY, FINCH, DONNELLY and SEILER, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

BARDGETT, Judge, dissenting.

I dissent because I believe the modern trend in construction and utilization of hospitals and perhaps other charitable-use property require an application by this court of the partial-exemption rule. This may require the overruling of a number of cases. In my opinion the rule would not violate any Missouri constitutional provisions as it would allow the exemption for those premises used exclusively for charitable purposes and not allow the exemption for premises not so used. See *Illinois Institute of Technology v. Skinner*, 49 Ill.2d 59, 273 N.E.2d 371 (1971). I see no legitimate reason for their being a difference in the tax consequence of constructing two buildings of four stories each—one for doctors' offices (not charitable) and one for a hospital (charitable)—as compared with one

eight-story building where four floors are hospital (charitable) and four floors for doctors' private offices (not charitable).

Under the present rulings of this court, it appears that in the case of the separate buildings, the hospital premises would be exempted and the offices of doctors not exempt; but in the case of the single building in which one-half is exclusively charitable and one-half private (non-charitable) no exemption is allowed. In my opinion, the value of those premises (property) used for charitable purposes should be exempt regardless of whether they happen to be part of the same building or not.

I would reverse and remand this case to the circuit court with directions to consider the matter under the partial-exemption rule.