BARNES HOSPITAL, a corporation, Plaintiff-Respondent,

v.

Ronald LEGGETT, Collector of Revenue of the City of St. Louis and John O'Shaughnessy, Assessor of the City of St. Louis, Defendants-Appellants.

No. 61003.

Supreme Court of Missouri, En Banc.

Nov. 14, 1979.

Rehearing Denied Dec. 6, 1979.

Jack L. Koehr, James J. Wilson, St. Louis, for defendants-appellants.

John L. Davidson, Jr., Greenfield, Davidson, Mandelstamm & Voorhees, St. Louis, for plaintiff-respondent.

DONNELLY, Judge.

This is an appeal by the Collector of Revenue and the Assessor of the City of St. Louis from a judgment entered by the Circuit Court of the City of St. Louis on August 24, 1978, in favor of respondent, Barnes Hospital, in which the court (1) ordered the Assessor to remove certain property owned by Barnes from the assessment rolls of the City, (2) prohibited the Assessor from placing the property on the tax rolls of the City and (3) prohibited the Collector from levying a tax or compelling payment. Since this case involves a revenue law, we have jurisdiction. Mo.Const. art. V, § 3.

This proceeding involves Queeny Tower, in which full-time and part-time faculty members of Washington University Medical School carry on teaching, research and Barnes Hospital functions, and in which part-time faculty members carry on a private medical practice for individual profit in offices subleased from Barnes Hospital.

On April 28, 1978, Barnes Hospital, a not-for-profit corporation, and owner of Queeny Tower, filed its petition in the Circuit Court seeking to enjoin the Collector, Ronald A. Leggett, from levying a tax or enforcing the collection of same on Queeny Tower for the year 1978 and subsequent years. The petition also sought to enjoin the Assessor, John O'Shaughnessy, from placing Queeny Tower on the tax rolls and from certifying to the Collector any tax bill or list which includes Queeny Tower.

The Barnes Hospital complex consists of eighteen buildings, some of which are owned by Barnes and some by Washington University. Barnes is an important center for teaching medicine and allied fields. Within the complex, teaching programs are conducted by the Washington University Medical School including hospital administration, nursing programs, practical nursing, dietary internships, anesthesia, pharmacy internship programs and radiology technician programs. Barnes and Washington University have jointly developed a world famed reputation, drawing sick and injured from great distances. All patients in Barnes Hospital may be subjects for instruction of the students of the Washington University School of Medicine. The medical staff of the hospital consists solely of the faculty of the school of medicine. Under the hospital bylaws a physician's appointment to the medical staff of the hospital ceases when he ceases to be a member of the faculty of the school of medicine. All the buildings of the Barnes complex are physically connected.

Queeny Tower is a seventeen-story building connected to a building to the east (Rand-Johnson) and has laboratories, patient care rooms, rooms for families, a non-commercial pharmacy, x-ray facilities, hospital

offices, a meeting place for the Board, eating facilities, and space for the faculty of Washington University Medical School. Barnes leases 39,989 square feet of space in Queeny Tower to the medical school for which an annual rent is paid constituting less than 0.5% of the total cost of patient care. The medical school in turn subleases a portion to physicians on its part-time faculty to carry on a private practice "in addition to their responsibility to the University for research and teaching."

The trial court made findings of fact, and conclusions of law. It found that the best patient care can be achieved by linking university teaching, research and patient care in the same center. The trial court also found that the location of full-time and part-time members of the faculty in Queeny Tower has improved patient care, research and teaching.

The trial court gave relief to Barnes and enjoined assessment. The Collector and Assessor duly and timely appealed from the judgment of the trial court.

Article X, § 6 of the Constitution of Missouri provides that "all property, real and personal, not held for private or corporate profit and used exclusively * * * for purposes purely charitable * * * may be exempted from taxation by general law."

Section 137.100, RSMo 1978, provides that "All property, real and personal, actually and regularly used exclusively, * * * for purposes purely charitable and not held for private or corporate profit * * * *" is "exempt from taxation for state, county or local purposes."

▮ There can be no question, under the provisions of Article X, § 6, *supra*, and § 137.100, *supra*, that only property which is used exclusively for purposes purely charitable can be held exempt from taxation. The difficulty arises when one poses the question: must the word "property" mean a building or tract *in its entirety* or may it mean a *portion* of a building or tract? Historically, this Court has held that the word "property" means a building or tract in its entirety—that buildings or tracts are indivisible for tax purposes.

In *Wyman v. City of St. Louis,* 17 Mo. 335 (1852), this Court held that where a building is used in part for a schoolhouse, and in part for other purposes, it is not exempt from taxation; there cannot be a separate assessment for that portion which is used for other than school purposes.

In *State ex rel. Spillers v. Johnston,* 214 Mo. 656, 663, 113 S.W. 1083, 1085 (1908), this Court diluted the *Wyman* holding somewhat and said: "The phrase 'exclusively used' has reference to the primary and inherent use as over against a mere secondary and incidental use. * * * If the incidental use * * * does not interrupt the exclusive occupation of the building for school purposes, but dovetails into or rounds out those purposes, then there could fairly be said to be left an exclusive use in the school on which the law lays hold."

However, in *Evangelical Lutheran Synod v. Hoehn,* 355 Mo. 257, 271–72, 196 S.W. 134, 145 (1946), this Court accurately stated the case law in Missouri to be generally that "where part of a unit tract is used for non-charitable purposes the whole is taxable since it is not used *exclusively* for charity * * * *."

We have concluded that the holdings in *Wyman, Spillers, Evangelical, supra,* and their progeny, should be overruled and a new sense of direction established. *See St. John's Mercy Hospital v. Leachman,* 552 S.W.2d 723, 728 (Mo. banc 1977) (Bardgett, J., dissenting).

In Annot., *Exemption of part of building or part of its value from taxation,* 159 A.L.R. 685, 687 (1945), it is stated that "[b]y the great weight of authority, a statute which in effect exempts from taxation property or buildings used for certain purposes authorizes a partial exemption of a building in case the building is used in part for exempt purposes and in part for non-exempt purposes." Justification for adoption of this position was ably articulated by the Supreme Court of Minnesota in *Christian Business Men's Committee v. State,* 228 Minn. 549, 38 N.W.2d 803, 811 (1949):

"In the light * * * of modern conditions involving the construction of large buildings, often consisting of many stories, there seems little justification for adhering to an assumed arbitrary rule of thumb that a building is necessarily taxable or nontaxable in its entirety. Big buildings have become the rule in the congested business areas of large cities where ground space is at a premium. The passage of time does not of itself amend the constitution, but it does amend the factual problems, human and physical, to which the constitution applies. If the purpose of tax exemption is to be achieved, we cannot ignore significant changes which have taken place in our physical surroundings. A tax-exempt institution obviously should not be denied the opportunity of acquiring an advantageous location in a congested downtown area simply because it may not be able to occupy for its restricted purpose an entire building consisting of several floors. Although it is a general rule that constitutional provisions exempting property from taxation are to be strictly construed, such provisions, though not subject to extension by construction or implication, are to be given a reasonable, natural, and practical interpretation in the light of modern conditions in order to effectuate the purpose for which the exemption is granted."

*See also Burgess v. Four States Memorial Hospital*, 250 Ark. 485, 465 S.W.2d 693 (1971); *Hanagan v. Rocky Ford Knights*, 101 Colo. 545, 75 P.2d 780 (1938); *Illinois Institute of Technology v. Skinner*, 49 Ill.2d 59, 273 N.E.2d 371 (1971); *YMCA v. Douglas County*, 60 Neb. 642, 83 N.W. 924 (1900); *Cleveland Library Ass'n v. Pelton*, 36 Ohio St. 253 (1880); *Board of Equalization v. Tulsa Pythian Benevolent Ass'n*, 195 Okla. 458, 158 P.2d 904 (1945); *Parker v. Quinn*, 23 Utah 332, 64 P. 961 (1901).

We hold that Mo.Const. art. X, § 6 and § 137.100, RSMo 1978, which exempt from taxation property "used exclusively * * * for purposes purely charitable," authorize a partial exemption of a building or tract, where that building, or tract, is used in part for charitable purposes and in part for non-charitable purposes.

Having abandoned the "all-or-nothing" rule of *Wyman* and the "dovetails into or rounds out" rule of *Spillers*, it remains for us to determine the point of departure from precedent. Feeling that justice will best be served by prospective application of the decision announced today, we hold that the new rule shall apply to this case and to all assessments which commence on the first day of January 1980, and thereafter. Section 137.080, RSMo 1978; *Abernathy v. Sisters of St. Mary's*, 446 S.W.2d 599 (Mo. banc 1969).

In *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Commission*, 566 S.W.2d 213 (Mo. banc 1978), this Court held that in order for hospital property to be held exempt from taxation under § 137.100 *supra*: (1) it must be actually and regularly *used exclusively* for purposes purely charitable as "charity" is defined in *Salvation Army v. Hoehn*, 354 Mo. 107, 114, 115, 188 S.W.2d 826, 830 (1945); (2) it must be owned and operated on a not-for-profit basis; and (3) the dominant use of the property must be for the benefit of an indefinite number of people and must directly or indirectly benefit society generally. *See* Note, *Rental Housing for the Elderly as a Tax Exempt Charity and Retention of the No Partial Exemption Rule*, 44 Mo.L.Rev. 154 (1979).

The judgment is reversed and the cause remanded for hearing, if necessary, with directions that a judgment be entered enjoining assessment *of those portions* of Queeny Tower which meet the *Franciscan* test.

BARDGETT, C. J., and SEILER, WELLIVER, MORGAN and HIGGINS, JJ., concur.

RENDLEN, J., dissents in separate dissenting opinion filed.

RENDLEN, Judge, dissenting.

I respectfully dissent. This case turns on the Missouri Constitution art. X, § 6, which provides that,

. . . *[A]ll* property, real and personal, not held for private or corporate profit and used exclusively . . . for purposes purely charitable . . . may be exempted from taxation by general law . . . (Emphasis added.)

and its implementing statute, § 137.100, subsection 5, RSMo 1978, which exempts

*All* property, real and personal, actually and regularly used exclusively . . for purposes purely charitable and not held for private or corporate profit, . . (Emphasis added.)

For many years this court has interpreted these clauses and their predecessors as requiring that the taxpayer bear the burden of showing his property is not liable to taxation, because exemption is the exception and it behooves one so claiming, to show it in clear terms. *Spillers v. Johnston,* 214 Mo. 656, 113 S.W. 1083, 1084 (1908). It was expressed this way in *Wyman v. City of St. Louis,* 17 Mo. 335, 337 (Mo.1852):

[W]hen one claims an exemption from a burden to which all others are subject, and whose freedom will increase their load, he must clearly show himself in the situation which entitles him to the exemption claimed.

This principle has been reaffirmed as recently as 1976 in *The City of St. Louis v. State Tax Commission,* 524 S.W.2d 839, 844 (Mo. banc 1976), and again in *St. John's Mercy Hospital v. Leachman,* 552 S.W.2d 723, 725 (Mo. banc 1977).

While the principal opinion does not disturb the burden of claiming an exemption from taxation, on other aspects of these constitutional and statutory sections it stands squarely against more than a century of legal precedent. The majority concede that this court historically "has held that the word 'property' [as used in these sections] means a building or tract in its entirety, . . . " and further that when considering such tracts or buildings they have always been held to be "indivisible for tax purposes." The readily apparent rationale for these consistent holdings that the exemption exists only when *all* of a building or tract is used for charitable purposes, is the unambiguous language of § 137.100, subsection 5, which, tracking that of the constitution, provides, "*All* property . . . actually and regularly used exclusively . . . for purposes purely charitable . . . ." (Emphasis added.) This and similar language of earlier constitutional and statutory sections have been so interpreted from 1852 in *Wyman v. City of St. Louis, supra* until today. Some of the cases in the unbroken chain are referenced in the majority opinion and are discussed in detail in *St. John's Mercy Hospital v. Leachman, supra.*

The majority however overrules this unbroken line of authority by announcing a rule that the language of the constitution and the statute "authorizes a *partial* exemption of a building or tract where the building or tract is used *in part* for charitable purposes and in part for non-charitable purposes." (Emphasis added.) In so doing they effectively engraft new language on the constitutional and statutory sections; hence art. X, § 6, would now read: "all [OR PART OF ANY] property, real or personal, not held for private . . . profit and [ANY PART OF WHICH IS] used exclusively for purposes purely charitable . . " with similar engraftment on § 137.100(5).

Strong practical considerations demonstrate why such engraftment or construction seems ill-advised and why the framers of our constitution and the legislature when enacting the implementing statute avoided this concept. With the establishment of this new exemption, monumental if not insoluble problems of tax collection (to say nothing of the assessment headaches) loom ahead. For example, if property taxes become delinquent on a six story building, the two mid-floors of which are leased to physicians for their private practice and personal gain, and the remaining floors are devoted to charitable purposes, we must ask: Which part will be sold for nonpayment of the tax? Will the purchaser at a tax sale acquire a title to all or just the mid two floors of the building? How will he segregate or subsequently sell his interest in a portion of the building? How will he borrow money on

the part purchased? Do we engraft a condominium or similar concept on what he buys in relation to the rest of the building and the use of the common areas? Who pays for repairs to the roof or the elevator? Does the court or the legislature draw and impose the terms of the "condominium" agreement? This not only requires that we reshape our notions of taxation but that we create legal interests for real estate and improvements thereon in which the fee may be rearranged or divided perpendicularly as well as horizontally. Such problems will not disappear or evaporate. Adoption of the attitude that "we will cross that bridge when we reach it" skirts round the fact that the legislature and the framers of the constitution apparently chose not to take this route at all. For these reasons, among others, I would reverse the judgment of the trial court and remand with directions that the property be returned to the assessment rolls of the City.