**BARNES HOSPITAL, a corp., Plaintiff-Appellant,**

v.

**Ronald A. LEGGETT, Collector of Revenue of the City of St. Louis, et al., Defendant-Respondent.**

No. 44645.

Missouri Court of Appeals, Eastern District, Division Five.

Jan. 18, 1983.

Motion for Rehearing/Transfer to Supreme Court Denied Feb. 10, 1983.

John L. Davidson, Jr., St. Louis, for plaintiff-appellant.

James J. Wilson, St. Louis, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

This appeal by Barnes Hospital involves taxation of Queeny Tower, a 17-story building connected to, used and owned by Barnes Hospital for the tax exempt purposes of treating patients and providing them with care and services. Washington University Medical School, whose teaching facilities are located within the Barnes Hospital complex and whose faculty members comprise the medical staff of the hospital, leases Queeny Tower from Barnes. The part-time faculty subleases offices in Queeny Tower from Washington University for use in their private practice as well as for use in their teaching, research and Barnes Hospital functions.

The City of St. Louis placed Queeny Tower on its assessment rolls for 1978. Barnes Hospital, a not-for-profit corporation, subsequently filed its petition in the Circuit Court of the City of St. Louis to enjoin the St. Louis City Assessor from placing Queeny Tower on the tax rolls and to enjoin the Collector of Revenue for the City of St. Louis from levying or enforcing tax collection on Queeny Tower for 1978 and subsequent years. After a hearing, the trial court made its findings of facts and conclusions of law in favor of Barnes by decree of August 24, 1978, which enjoined tax assessment or its collection on Queeny Tower. The Collector and Assessor appealed to the Supreme Court which reversed the cause with directions that "a judgment be entered enjoining assessment of those portions of Queeny Tower which meet the *Franciscan* [566 S.W.2d 213 (Mo.banc 1978)] test." *Barnes v. Leggett,* 589 S.W.2d 241, 244 (Mo. banc 1979).

On remand, the trial court conducted three days of hearings, modified its earlier order and entered its judgment in which the trial court permitted the Collector of Revenue and the Assessor of the City of St. Louis:

(1) To assess 16.6% of the buildings of Barnes' property, representing the portion of those buildings occupied by part-time faculty members also engaged in private practice of medicine;

(2) To place those portions of appellant's property on the assessment rolls of the City of St. Louis for the year 1978 for a total assessment of $315,000; and

(3) To levy a tax for compelled payment on these portions.

We reverse.

The sole question raised is whether property owned by a tax exempt hospital and leased to the medical school for use by its faculty may be taxed where its part-time faculty members, also engaged in limited private practice, maintain their offices therein.

The facts are undisputed. We borrow freely from the Supreme Court opinion's recitation of the pertinent facts without the use of quotation marks. *Barnes v. Leggett,* ﹐*supra.* The Barnes Hospital complex consists of eighteen buildings, some of which are owned by Barnes and some by Washington University. Barnes is an important center for teaching medicine in allied fields. Within the complex, teaching programs are conducted by the Washington University Medical School including hospital administration, nursing programs, practical nursing, dietary internship, anesthesia, pharmacy internship programs and radiology technician programs. Barnes and Washington University have jointly developed a world-famed reputation in medical pedagogy, drawing sick and injured from great distances to benefit from their expertise. All patients in Barnes Hospital may be subjects for instruction of the students of Washington University School of Medicine. The medical staff of the hospital consists solely of the faculty of the School of Medicine.

Under the hospital by-laws, a physician's appointment to the medical staff of the hospital ceases when he ceases to be a member of the faculty of the school of medicine.

All the buildings of the Barnes complex are physically connected. Queeny Tower is a seventeen story building connected to a building to the east (Rand-Johnson) and has laboratories, patient care rooms for families, a non-commercial pharmacy, x-ray facilities, hospital offices, a meeting place for the Board, eating facilities, and space for the faculty of Washington University Medical School. Barnes leases 39,989 square feet of space in Queeny Tower to the medical school for which an annual rent is paid constituting less than 0.5% of the total cost of patient care. The medical school in turn subleases a portion to physicians on its part-time faculty to carry on a limited private practice in addition to their responsibility to the university for teaching and research.

On remand, in its findings of fact and conclusions of law, the trial court found additionally that the office practice of the part-time faculty members is closely integrated with bed-side practice as a role model on patient care. Patient care, instruction of students and the functioning of the clinics for the indigent are materially improved by the presence of part-time doctors in the hospital on a geographically full-time basis. Several highly qualified physician educators testified as expert witnesses that the space-sharing arrangement for the part-time faculty is a necessary concomitant to the hospital's eleemosynary purposes. The heavy load of clinic teaching and patient care falls on the part-time faculty. Without the part-time faculty, Barnes would have to reduce substantially the free clinic work that it does. Its out-patient load exceeds that of St. Louis City Hospital (Starkloff Memorial Hospital), and of both City hospitals before the City closed its Homer G. Phillips Hospital facility. Utilization of the part-time faculty enables the hospital to provide lower cost of care for the indigents within the City. Absent the part-time faculty, Barnes would have to substantially reduce free medical services provided to the City's

needy. Equally important is the teaching load of the part-time medical school faculty which is on par with that of the full-time faculty of other departments of the Washington University. In the arrangement where Barnes leases the space to the university, the rent paid to Barnes by the medical school does not yield a corporate profit. Nor does the rent paid by the part-time faculty to the medical school, and, in turn, to Barnes Hospital, generate profit. The hospital sustains a loss.

Both the Missouri Constitution and the Revised Statutes of Missouri require that for property to be exempt, it must be "used exclusively" for exempt purposes. Mo. Const., Art. X, § 6; § 137.100(5) RSMo 1978.

Article X, § 6 of the Constitution of Missouri provides that "all property, real and personal, not held for private or corporate profit and used exclusively ... for purposes purely charitable ... may be exempted from taxation by general law."

Section 137.100(5) RSMo 1978 exempts from taxation, *inter alia,* "all property, real and personal, actually and regularly used exclusively ... for purposes purely charitable and not held for private or corporate profit...."

In *Barnes Hos. v. Leggett,* 589 S.W.2d 241 (Mo.banc 1979), the Supreme Court stated that property must meet the following provisions, first enunciated in *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Comm'n.,* 566 S.W.2d 213 (Mo. banc 1978), in order to qualify for tax exemption:

> "(1) it [property] must be actually and regularly used exclusively for purposes purely charitable as 'charity' is defined in *Salvation Army v. Hoehn,* 354 Mo. 107, 114, 115, 188 S.W.2d 826, 830 (1945); (2) it must be owned and operated on a not-for-profit basis; and (3) the dominant use of the property must be for the benefit of an indefinite number of people and must directly or indirectly benefit society generally." 589 S.W.2d at 244.

The first prerequisite for exemption is that the property be "used exclusively" for charitable purposes. Nowhere in its decision did the Missouri Supreme Court define the meaning of the statutory words "used exclusively" or "purposes." Thus, the initial proviso of the qualification articulated first in *Franciscan, supra,* the statutory phrase "used exclusively," must be examined. The phrase could mean "solely" or "entirely" in its narrowest sense. We do not construe it in that sense.

Cases analyzing this statutory phrase prior to *Barnes* have not construed it literally, nor do we. In 1974, a building owned by an engineer's club which was used for limited social activities and on occasion was used by private companies, was found to be exempt as a charity from ad valorem taxes. *City of St. Louis v. State Tax Comm'n.,* 524 S.W.2d 839 (Mo.banc 1975). Similarly, residential properties owned by a charitable hospital and occupied by hospital personnel were held to be used exclusively for charitable purposes and hence exempt from taxation. *Bethesda Gen. Hosp. v. State Tax Comm'n.,* 396 S.W.2d 631 (Mo.1965). The statutory phrase "used exclusively" has reference to the primary and inherent use as against a mere secondary and incidental use. *Community Memorial Hosp. v. City of Moberly,* 422 S.W.2d 290, 294–95 (Mo.1967). Our courts since *Barnes* have continued their reliance and acceptance of this definition. *See Pentecostal Churches of America v. Hughlett,* 601 S.W.2d 666, 668–69 (Mo.App. 1980).

■ In *Franciscan,* the Missouri Supreme Court held that "the words used exclusively ... for purposes purely charitable' ... should and do have the same meaning whether applied to property used for a hospital, for training handicapped workers, for operating a YMCA type of program or for providing housing for the aged." 566 S.W.2d at 223–24. Therefore, we are unwilling to deny the exemption to Barnes Hospital on this basis. We reject respondent's contention that the use of the office space in the private practice by the part-time faculty does not meet the 1st prong of the *Franciscan* tri-partite test. We reject

the rigid adherence to a literal reading of the statute. We further interpret the Supreme Court in *Barnes* to permit such conclusion.

■ The policy underlying the statute is to encourage charitable organizations. The meaning we attach to the language of the statute accords with the mandate in *Barnes*. Although it is the general rule that constitutional provisions exempting property are to be strictly construed, such provisions, though not subject to extension by construction or implication, are to be given a reasonable, natural and practical interpretation in light of modern conditions in order to effectuate the *purpose* for which the exemption is granted. *Christian Businessmen's Committee v. State,* 228 Minn. 549, 38 N.W.2d 803, 811 (1949); *Barnes Hospital v. Leggett,* 589 S.W.2d 241, 244 (Mo.banc 1979) (emphasis added).

It is also recognized that each tax exemption case is peculiarly one which must be decided upon its own facts, turning upon the particular record presented. *St. John's Mercy Hospital v. Leachman,* 552 S.W.2d 723, 726 (Mo. banc 1977); *Jackson County v. State Tax Comm'n.,* 521 S.W.2d 378, 381 (Mo. banc 1975); *Bethesda General Hospital v. State Tax Comm'n.,* 396 S.W.2d 631, 633 (Mo.1965). Examining the record against this legal backdrop leads to the conclusion that the office space contingently leased by part-time faculty members also engaged in the private practice of medicine is property actually and regularly used exclusively for purposes purely charitable as required by the *Franciscan* test.

■ The second prerequisite for charitable exemption is that the property be owned and operated on a not-for-profit basis. 589 S.W.2d at 244. No challenge is made that Barnes Hospital is not a charitable or not-for-profit institution. The record satisfies the finding that the rent paid to Barnes Hospital by the Medical School did not yield a profit; on the contrary, the hospital showed a loss. Moreover, even had there been a profit, the exemption would still inure to Barnes Hospital so long as any profit derived from the hospital's operation

was achieved *incidentally* to the primary goal of the organization. The second requirement having been satisfied, we look to the third prerequisite.

■ The third prong for charitable exemptions is that the dominant use of the property be designed, directly or indirectly, to benefit an indefinite number of people. 589 S.W.2d at 244. The evidence adduced at trial clearly satisfies this requirement. The duties conducted by the staff of Barnes Hospital, especially by the part-time faculty, pro tanto benefits the public. The state or municipality generally assumes care of the indigent and helpless. In the City of St. Louis, Barnes Hospital shoulders a segment of this burden, a task more onerous in light of the closing of Homer G. Phillips Hospital. The expert witnesses at trial unanimously agreed that patient care, instruction and functioning of the clinics for the indigent were materially improved by the presence of the part-time doctors in the hospital on a geographically full-time basis. "Part-time" seems a misnomer to describe the contribution made by physicians teaching and monitoring clinics in excess of forty hours per week. The out-patient load at Barnes exceeds that of the City Hospital. Without the part-time faculty, Barnes would have to reduce substantially the free services provided the needy, thereby further encumbering taxpayers, both local and state. We consider the evidence clearly satisfies all three tines of the *Franciscan* test.

For the foregoing reasons, the judgment of the trial court is reversed and the cause remanded with directions that the decree of August 24, 1978, remain in full force and effect and that appellant's questioned property be removed from the tax rolls of St. Louis City and the City Collector be prohibited from levying tax or compelling payment thereon.

SMITH and SIMON, JJ., concur.