Donald F. BARR, et al., Plaintiffs–
Appellants,

v.

The CITY COUNCIL OF the CITY OF
CHESTERFIELD, et al., Defendants–
Respondents.

No. 66271.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 23, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 26, 1995.

Application to Transfer Denied
Sept. 19, 1995.

Albert A. Michenfelder, Jr., Clayton, for appellants.

Douglas R. Beach, Clayton, Stuart J. Vogelsmeier, James J. Hennelly, Richard D. Watters, St. Louis, for respondents.

DOWD, Judge.

Donald F. Barr, et. al., Plaintiffs, appeal from the trial court's judgment affirming the City of Chesterfield's approval of a petition for an amended Conditional Use Permit (CUP) authorizing the construction and operation of a medical office and parking garage on the premises of St. Luke's Episcopal–Presbyterian Hospital (Hospital). We affirm.

Hospital is located on a tract of land zoned Non–Urban. Although hospitals are not a permitted Non–Urban use, they may be approved as a conditional use. Hospital has operated under a CUP granted by St. Louis County since 1978. The CUP allows the following uses for Hospital's property:

> The use allowed by this permit shall be that of a 500 bed (maximum) general acute hospital, including any accessory facilities customarily associated with said hospital, such as *medical offices*, research and education centers, specialized treatment centers, (i.e., a radiation-oncology center), etc. Associated parking and service areas shall also be permitted.

On February 14, 1992, Hospital filed a Petition to Amend Conditional Use Permit with the St. Louis County Planning Commission stating:[1]

> No new uses are requested. Petitioner requests appropriate changes to its Conditional Use Permit ("CUP") as necessary to authorize construction of an eight-story

---

1. Hospital originally filed a Petition To Amend Conditional Use Permit on October 24, 1989, and the St. Louis County Council approved the petition. On appeal, this court reversed the trial court's decision affirming the county council's decision after a remand because we found the trial court lacked authority to remand to the council where the applicable zoning ordinance was not included in the record. *See, Comfort v. County Council*, 822 S.W.2d 460 (Mo.App.1991).

building which is connected to the Hospital at the first, second and sixth levels. This building will house the Hospital's Admitting Department, Rehabilitation, Sports and Physical Medicine Department, Outpatient Surgical Services, Laboratory Services, Department of Pediatrics, Cytology Lab Office and Department of OB/GYN and offices for employees and physicians on the Hospital's medical staff. In addition, Petitioner requests appropriate changes to the CUP for construction of a parking garage.

At the time this request was filed, the medical building and parking garage had already been partially completed.

The St. Louis County Planning Commission approved Hospital's petition and sent a report to the St. Louis County Council. On May 4, 1992, Plaintiffs filed a Notice of Protest with the Council. On May 15, 1992, the City of Chesterfield annexed the tract of land where the Hospital is located,[2] so the protest proceedings were held before the City of Chesterfield Planning Commission. The Chesterfield Zoning Ordinance provides for the following accessory uses:

*Accessory land uses and developments.* Subject to compliance with the procedures of this section, accessory buildings, structures, and uses are permitted in conjunction with a permitted land use or development or (unless restricted by applicable condition) a conditional land use or development when such accessory building, structure or use is customarily found in conjunction with the primary use, is a reasonably necessary incident to the primary use, is clearly subordinate to the primary use, and serves only to further the successful utilization of the primary use. Accessory uses include the following:

(1) Devices for the generation of energy, such as solar panels, wind generators, and similar devices.

(2) Individual sewage treatment facilities serving an individual dwelling, farm, or nonresidential use, as approved by the appropriate regulatory agency. The sewage treatment facilities shall not exceed five thousand (5,000) gallons per day flow.

(3) Private stables.

(4) Signs (business, directional, and information).

On July 27, 1992, the Chesterfield Planning Commission approved Hospital's petition. On September 9, 1992, a public hearing was held on Hospital's petition. At the hearing, Paul Wunderlich, Hospital's President, testified that hospital care is changing from primarily in-patient care to primarily outpatient care; therefore, Hospital is required to have medical offices available on its campus in order to provide the best possible care for patients.

Gary Olson, Hospital's Executive Vice President, testified about the physical characteristics of the medical building. He stated that the medical building is not a freestanding building. Rather, it is physically connected to Hospital at the second and sixth floors, and it is totally dependent on Hospital for all of its power and utilities. He also testified the first, second and sixth floors of the building are used solely by Hospital to provide services such as physical therapy, cardiac and pulmonary rehabilitation, and pre-surgery admitting. The third floor of the medical building will also house women's health referral services and an expansion of Hospital's laboratory facilities. He stated a physician must be on Hospital's staff in order to have an office in the new medical building. Further, the parking facility attached to the new medical building serves hospital patients and visitors as well as those visiting the medical offices.

Dr. George Tucker, Chief of Surgery at Hospital, testified that due to recent changes in the practice of medicine, medical office buildings are associated with many of the hospitals in the area. Further, doctors who have offices on Hospital's campus do a larger quantity of their work at Hospital, check on patients more often, serve on more commit-

---

**2.** Although the City of Chesterfield annexed the property upon which Hospital is located, the property retains the same zoning it had under the St. Louis County Zoning Ordinance until it is properly changed by following the procedural requirements of City of Chesterfield's zoning ordinance. *See, Dahman v. City of Ballwin,* 483 S.W.2d 605 (Mo.App.1972).

tees, and participate in more educational conferences and meetings.

On October 5, 1992, the City Council of the City of Chesterfield (Council) approved Hospital's petition. On November 4, 1992, a Petition for Administrative Review was filed in the St. Louis County Circuit Court pursuant to § 536.130, RSMo 1986. The trial court entered an order affirming the Council's decision. Plaintiffs appealed.

■ As this is an appeal from a contested administrative case, we review the findings and decision of the Council and not that of the trial court. *Village of Westwood v. Board of Adj.,* 811 S.W.2d 437, 440[1] (Mo. App.1991). We will affirm the Council's decision if it is supported by competent and substantial evidence upon the whole record. *State ex rel. Columbia Tower v. Boone County,* 829 S.W.2d 534, 535–36 (Mo.App.1992).

Although the original CUP granted by St. Louis County in 1978 allows for a medical office building such as this one, we address whether the medical office building and parking facility at issue here, with the additional height and square footage they add to the Hospital complex, are allowable accessory uses under the Chesterfield zoning ordinance, the ordinance which is applicable in this case.

■ In determining whether a particular use is a permitted accessory use, the decision must be based on "the particular zoning ordinance and the context in which it occurs." *St. Louis County v. Taggert,* 866 S.W.2d 181, 183[9] (Mo.App.1993). The words of the zoning ordinance are to be given their plain, ordinary meaning. *Richmond Heights v. Richmond Heights Presbyterian Church,* 764 S.W.2d 647, 647–48[1, 2] (Mo. banc 1989).

According to § 1003.107 of the Chesterfield Zoning Ordinance, a building or use is considered a permitted accessory use if it: (1) is customarily found in conjunction with the primary use; (2) is a reasonably necessary incident to the primary use; (3) is clearly subordinate to the primary use; and (4) serves only to further the successful utilization of the primary use.

■ First, Plaintiffs allege that a third medical office building is not a use customarily found in conjunction with the property's primary use as a hospital. Plaintiffs argue that the City's reliance on the fact that three other hospitals in the St. Louis area have made provisions for medical offices is irrelevant because all of these hospitals are in different zoning categories. Plaintiffs cite *Aim Rent A Car v. Zoning Board of Appeals,* 156 A.D.2d 323, 548 N.Y.S.2d 275 (N.Y.App.Div.1989), a New York case where the court held an automobile rental business was not a use customarily incidental and subordinate to a hotel. In *Aim,* the court held, while four out of fourteen area hotels offer on-site automobile rental, it cannot be said as a matter of law that automobile rentals have become commonly, habitually and reasonably associated with the operation of a hotel. *Id.* at 276. Conversely, in this case there was extensive testimony that medical offices are customarily found in conjunction with hospitals today due to the change in the health-care industry to performing more procedures on an out-patient basis. Further, several cases from other states also indicate the trend is for hospitals to provide space for medical offices as part of a unified hospital facility. *See, Pellegrino v. City Council of Springfield,* 22 Mass.App.Ct. 459, 494 N.E.2d 1036 (1986); *Peterson v. City of Highland Park,* 153 Ill.App.3d 826, 106 Ill.Dec. 804, 506 N.E.2d 604 (1987). In *Peterson,* the court stated, "in today's health care environment, [a medical office building] ... is something usually connected with a hospital." 106 Ill. Dec. at 813, 506 N.E.2d at 613[9].

■ Second, Plaintiffs allege that the medical office building was not a reasonably necessary incident to Hospital's primary use because there was no showing that Hospital needed additional surgeons or that it needed to expand any of the services it offered. Plaintiffs allege "there are no facts to show that any additional physicians are reasonably needed 'on-campus' for the Hospital to provide for the hospital needs of its patients, or even of the community." However, Dr. Tucker testified that because of the new building, Hospital has been able to provide five new services which were not before available in the Chesterfield area.

Further, Plaintiffs allege "the ordinance requires that a permitted accessory use be a

'reasonably necessary incident to the primary use,' and there is nothing incidental about the eight-story tall third physician's office building." They allege the medical building is so large and so extensive of an expansion that Hospital is essentially starting a new business. *See, Medusa Aggregates Co. v. City of Columbia*, 882 S.W.2d 223, 225[1] (Mo.App.1994). We disagree. The medical offices in question here do not solely provide space for physicians' offices. In fact, over one-third of the new medical building is devoted to purely hospital uses including a physical therapy center, an expanded laboratory facility, and an admitting room. Third, contrary to Plaintiffs' allegations, the new medical building is clearly subordinate to Hospital in both its size and its function. Plaintiff argues that the new medical building is not clearly subordinate to Hospital because more of the building is used for physicians' offices than for Hospital's facilities. However, even after the addition of this third medical building, 70% of the space on Hospital's campus is devoted to purely Hospital uses. Also, the medical building is clearly subordinate to Hospital in that its function is to serve the needs of Hospital by enabling it to attract more physicians and provide more cost-effective and more accessible care.

■ Finally, Plaintiffs allege the medical building does not serve only to further the successful utilization of Hospital. We disagree. The evidence showed that one-third of the new building is occupied by Hospital. There was sufficient evidence for the City to find the medical building and parking facility served only to further Hospital's purposes. Having physicians so close to Hospital only helps it by: allowing physicians to pay more attention to hospitalized patients, attracting needed specialist and services, helping it compete with other hospitals that offer such facilities, and furthering quality patient care.

Plaintiffs argue the medical offices do not serve only Hospital because the physicians also earn a living there. However, physicians also earn income every time they perform a surgery in one of Hospital's operating rooms. Further, in *Barnes Hospital v. Leggett*, a tax case, the court found the hospital was still being used exclusively for charitable purposes even though office space within the hospital was leased to physicians for their private practices. 646 S.W.2d 889, 892–93[1] (Mo.App.1983).

■ We agree with Plaintiffs that the "serves only" language must be given its plain and ordinary meaning. *Suburbia Gardens Nursery, Inc. v. St. Louis County*, 377 S.W.2d 266, 272 (Mo.1964). However, the interpretation given to the language by the body in charge of its enactment and application is also entitled to great weight. *St. Louis County v. Taggert*, 866 S.W.2d 181, 182[6] (Mo.App.1993). When the St. Louis County Council granted Hospital its original CUP in 1978, the St. Louis County Zoning ordinance also contained the requirement that an accessory use "serve only to further the successful utilization of the primary use." However, the CUP which Hospital was granted specifically allowed for medical offices as an accessory use. The City did not err in finding the only purpose for the medical office building and the parking garage is to serve the successful utilization of Hospital.

We affirm the City's decision to approve the amendment to Hospital's CUP.

CRANDALL, P.J., and CRAHAN, J., concur.